# WHEELING.

## Couch *v.* Eastham *et al.*
### and
### Eastham *v.* Couch *et al.*

Submitted June 16, 1887.—Decided June 25, 1887.

1. Wills—Construction.

     When the language of the testator is plain and his meaning clear, the courts can do nothing but carry out the will of the testator, if it be not inconsistent with some rule of law. (p. 778.)

2. Wills—Construction.

     In the interpretation of a will, the true enquiry is, not what the testator meant to express, but what do the words used express. (p. 788.)

3. Wills—Construction.

     When the will affords no satisfactory clue to the real intentions of the testator, the court must from necessity resort to legal presumptions and rules of construction. But such rules yield to the intention of the testator apparent in the will, and have no application when the intention thus appears. (p. 778.)

4. Wills—Construction—Evidence.

     To aid in ascertaining the true construction of the will, evidence may be received of any facts known to the testator which may reasonably be supposed to have influenced him in the disposition of his property. But parol evidence of the intention of the testator is admissible only in cases when there is a latent ambiguity. (p. 778.)

5. Wills—*Voluntas Stat pro Ratione.*

     When a testator has the legal capacity to make a will, he has the legal right to make an unequal, unjust or unreasonable will. *Voluntas stat pro ratione.* (p. 790.)

6. Wills—Devisees.

     The rule, that when a devisee, whose estate is undefined, is directed to pay the testator's debts or legacies, he takes an estate in fee, has no application where the estate of the devisee is defined and fixed by the will. (p. 793.)

7. WILLS—LEGACY—INTEREST.

It is an undisputed general rule, that, although a legacy vests, where no special intention to the contrary appears, at the death of the testator, it does not begin to carry interest until a year afterwards. But where the legacy is charged solely on land or given to a child and directed to be paid by a devisee of land in order to make the portion of such child equal that of the devisee of the land it should bear interest from the date of the death of the testator. (p. 793.)

*J. W. English, J. B. Menager* and *J. A. Hutchinson* for appellant.

*Knight & Couch* and *W. A. Quarrier* for appellee.

SNYDER, JUDGE:

In April, 1884, Samuel Couch died at his home in Mason county, the owner of a valuable estate, consisting of both real and personal property, all of which he disposed of by his last will. The will is dated May 15th, 1879, and was duly probated in said county, May 13th, 1884. The first clause of the will is in the following words:

"First. I give and devise unto my son, Peter S. Couch, the farm on which I reside in Mason county, West Virginia, containing about nine hundred and fifty acres; but it being my desire to divide my property as near equally as may be between my two children, Peter S. Couch and Sarah Frances Eastham, I direct my said son, Peter S. Couch, to pay to his sister, Sarah Frances Eastham, the sum of four thousand dollars, and I hereby make the said sum of four thousand dollars a lien and charge upon the real estate aforesaid devised to said Peter S. Couch until the same is paid to said Sarah F. Eastham or her heirs; but in the event that said Peter S. Couch shall die, leaving no lawful children surviving him, (but leaving his wife, Mary Catharine Couch, surviving him) it is my will and desire that the title to all of my real estate aforesaid, shall pass to and be vested in my daughter, Sarah Frances Eastham, or her children if she be not then living, upon the payment by her, or her said children, to Mary Catharine Couch of the sum of *four thousand dollars*, but in the event that said Mary Catharine Couch shall not then be living, it is my will and desire

99

that said real estate shall pass to and vest in my said daughter, Sarah F. Eastham, and in case of her death, to her children, without the payment of anything in consideration therefor."

The testator by the second clause of his will gave his daughter, Sarah Frances Eastham, all of his personal estate with the exception of some specific legacies which he gave to others.

By a codicil dated September 8th, 1880, the testator modified said first clause by substituting the words, "two thousand dollars," for the words "four thousand dollars," which I have italicised in said clause. This is the only change made in the will by the codicil. (*Couch* v. *Eastham*, 27 W. Va. 796.)

In April, 1886, Peter S. Couch brought the first of these suits in the Circuit Court of Mason county against his sister, Sarah Frances Eastham, and her children and others, for the purpose of having the said will construed. In this suit the plaintiff claims that by the first clause of the will he takes an estate in fee in the farm of 950 acres, defeasible upon his dying without leaving children surviving him, and that if he so dies without children then living, his fee is defeated, and the farm passes to and vests in his sister, if living, and if not, then in her children, and in that event neither he nor the farm is chargeable with the four thousand dollars therein mentioned in favor of his sister. But if he dies, leaving children, and his fee thus becomes absolute, then, when this fact is determined by his death, leaving children, and not till then, does the four thousand dollars in favor of his sister become a fixed charge on the fee of the farm. In other words, the plaintiff contends that if the contingency happens, which by the provisions of the will reduces his interest to a life estate only, then there is no charge in favor of his sister, and that it is only when and in the event he dies, leaving children, that the charge takes effect and becomes payable.

The said Sarah Frances Eastham also filed her bill in said court against the said Peter S. Couch, her children and others, to have said farm of 950 acres rented to pay the legacy of $4,000 charged thereon in her favor, or to have so

much thereof sold as may be required to pay said legacy. In this suit the plaintiff claims, that the plain intent of the first clause of the will is, that the $4,000 is to be paid to her unconditionally; and is to be so paid, whether the said Peter dies leaving children or not, or whether his estate in the farm happens to be an absolute fee or an estate for life only, and that she has a present right to collect and enjoy the same.

There was a demurrer to the bill in the first cause which the court overruled. Answers were filed to each bill, exhibts filed and depositions taken by the respective parties; and on March 12, 1887, the two causes were heard together, and the court entered a decree by which it sustained the claim of the plaintiff in the first cause and dismissed the bill in the second cause, thereby deciding that there is no charge on the farm in favor of the sister unless and until, by the death of Peter, leaving children, it shall be determined that he takes a fee simple estate in the farm, and in that event and then only is there such charge. From this decree Sarah F. Eastham has appealed.

No portion of the will of Samuel Couch, except what has been before given, furnishes any aid in the interpretation of the clause in controversy. The following facts appear in the record: The testator left two children, Peter S. Couch and Sarah F. Eastham. The latter is the wife of Wellington Eastham and the mother of seven children, all of whom are infants and still living. The former was married to his present wife, Mary C. Couch, in the year 1868, eleven years before the date of the will and sixteen before the death of the testator. At the time of his father's death he was about 42 years of age and had no children then nor has he had any since. The wife of the testator died 12 years before he did, and from the time of his wife's death until his own death, the testator and the son Peter lived together on the farm of 950 acres. The value of said farm according to the testimony is about $18,000, and its annual rental value from $800 to $1,000. The net value of the personal estate paid over to the daughter under the provisions of the will was $9,719.

The only controverted question before this Court is the true interpretation and effect of said first clause of the will,

and even that is narrowed down to the simple enquiry, whether or not the $4,000 therein given to the daughter, is an absolute gift and charge on the farm or merely contingent upon the son taking the farm in fee simple?

The following rules for the interpretation and construction of wills have been fully settled by the Courts of Virginia and of this State:

I. When the language of the testator is plain and his meaning clear, the courts have nothing to do but to carry the expressed will of the testator into effect, if it is not inconsistent with some rule of law. (*Whelan* v. *Reilly*, 5 W. Va. 356; *Graham* v. *Graham*, 23 Id. 36; *Rayfield* v. *Gaines*, 17 Gratt. 1.)

II. In the interpretation of a will, the true enquiry is, not what the testator meant to express, but what *the words used do express*. (*Burke* v. *Lee*, 76 Va. 386.)

III. Where the will affords no satisfactory clue to the real intention of the testator, the court must from necessity resort to legal presumptions and rules of construction. But such rules yield to the intention of the testator apparent in the will, and have no application where the intention thus appears. (*Tebbs* v. *Duval*, 17 Gratt. 349.)

IV. To aid in ascertaining the true construction of the will, evidence may be received of any facts known to the testator which may reasonably be supposed to have influenced him in the disposition of his property, and also as to all the surrounding circumstances at the time of making the will. (*Wootton* v. *Redd*, 12 Gratt. 196; *Atkinson* v. *Sutton*, 23 W. Va. 197.)

In *Burke* v. *Lee*, the court says: "If there be found a subject which satisfies the disposition of the property as contained in the will, evidence can not be received to show that the testator intended a greater or a different subject or estate. The only exception to the rule excluding parol testimony of the intention of the testator is in case of latent ambiguity." (76 Va. 389; *Avery* v. *Chappel*, 6 Conn. 270, S. C. 16 Am. Dec. 53.)

The provision or clause of the will now under consideration is expressed in plain, unambiguous terms. The objects of the testator's bound as well as the subject disposed of are

fully identified. According to the rules before stated, it seems to me, there is very little room for any attempt to construe this will. To undertake to do so, can be little more than to repeat its provisions. In clear and positive terms the testator devises to his son, Peter, his farm of 950 acres less $4,000.00. He bequeaths to his daughter, Sarah, his personal estate and $4,000.00 out of the farm. In making this charge on the farm the testator explains why he does it. He says he did it in order to make the division of his property between his two children as nearly equal as may be. The context clearly shows, that his purpose in using the words, "it being my desire to divide my property as near equally as may be between my two children," was to declare or explain why he required Peter to pay his daughter the $4,000.00. These words were not used in any substantive sense. But if they were employed to declare an intention or purpose to divide the estate equally, still they can not be construed to mean that the testator intended to delegate the authority to make this division to his executor or his neighbors. He made the division himself, and whether he did so correctly or not, it was his absolute right to do it in any way he might choose, and therefore there is no appeal from his judgment, or power in the courts to change it. We have already decided in reference to this same will, that if the testator made a mistake and did in fact what he did not intend to do, we can not go beyond the will itself to correct such mistake. ( *Couch* v. *Eastham*, 27 W. Va. 796.)

There is, however, no complaint as to this portion of the will. It is conceded by the appellee, if this were all, that the division of the property would be about equal, and it would be his duty to pay the $4,000 at once. But the inequality it is contended may possibly result from the subsequent provision which devises the remainder in the farm to Sarah or her children in the contingency, that Peter dies without leaving children surviving him. It is said, that if the fee of the farm less $4,000 is equal to the personal estate plus $4,000, it is manifest that a life estate only in the farm less the $4,000 must of necessity be greatly less than the personal estate plus the $4,000, plus the fee in remainder in the farm. That in this latter event the division would be

grossly unequal and Peter would in fact get little or nothing instead of one half the estate.

If we conclude this to be true, unless we can find in the will itself a different purpose, we have no power to change it. When a testator has the legal capacity to make a will, he has the legal right to make an unequal, unjust or unreasonable will. *Voluntas stat pro ratione.* (*Boylan ads. Meeker*, 28 N. J. 274.) The courts may construe and enforce a will, but they can neither make nor change one. That is the province of the testator alone.

But in reply to this position it is contended by the appellee, that the testator has on the face of his will declared his intention to divide his property equally between his two children; and that therefore he could never have intended or assented to such an unjust and unequal division as the one above suggested. We have already shown, as we think, that this declaration of the testator was not the manifestation of a substantive disposition of his property, but simply the reason for a particular provision in his will. If, however, it be conceded, that this general declaration may be considered as the manifestation by the testator of a purpose to divide his property equally, and that this purpose should have a substantive operation in the interpretation of the will, still that would not warrant us in imposing conditions, which are not only not contained in the will, but which are in positive contradiction of other portions of the same clause of the will. The express command of the testator in his will is: " I direct my said son, Peter S. Couch, to pay to his sister, Sarah Frances Eastham, the sum of four thousand dollars, and I hereby make said sum of four thousand dollars a lien and charge upon the real estate aforesaid, devised to said Peter S. Couch, until the same is paid to said Sarah F. Eastham or her heirs." This is an absolute and unqualified direction to Peter to pay to his sister $4,000 without any condition or contingency of any kind, and to make the command and requirement, if possible, still more absolute the said sum is made an express lien and charge upon the farm *until it is paid.* There is no word or sentence in the will, that, by any just construction, can make the payment of this legacy dependent upon the dying of Peter leaving children;

nor is there any intimation, that it is not to be paid until Peter dies leaving children, or in the event. he dies without leaving children, that it is not to be paid at all. Whether Peter will die leaving children surviving him can not be determined until the death of Peter occurs, and then it will be impossible for him to pay it. Yet the positive command is, that *Peter shall pay it*, and not his heirs or personal representative. It seems to me, therefore, that the Circuit Court plainly erred in deciding, that said legacy should not be paid unless and until Peter should die leaving children surviving him.

Even if this conclusion should be made to appear by extrinsic evidence to be in positive conflict with any notion or opinion, this Court, or the witnesses, who testified in these causes, might have of what would be an equal division of the testator's property in any possible contingency, we would still be bound to adhere to it, because it is the judgment or opinion of the testator as what shall be considered an equal division, and not that of us or the witnesses, which is to control our decision. But if we were permitted to enter upon the forbidden enquiry, and attempt with the aid of the extrinsic evidence before us to reconcile the judgment of the testator with our own and that of the witnesses, it does not necessarily follow, that there would be any very decided difference of opinion. Putting ourselves, therefore, in the place of the testator at the time he made his will, and having regard to the surrounding facts and circumstances of which he must have been cognizant, was the judgment of the testator, that he had made, as near as may be, an equal division of his property between his two children plainly erroneous if the interpretation we have given the will is to prevail?

According to the scheme of the will, the objects of the testator's bounty were divided into two classes: On the one side were Peter and his wife and his children if he left any, and on the other were Sarah and her children. Between these two classes he divided his estate equally. The appellee admits that such would be the fact if he dies leaving children. Such would be equally the fact if the testator had limited the bequest to Sarah as he did the devise to Peter;

that is, if he had provided cross remainders in favor of the other in the event that either one of his two children died without leaving children. But from the standpoint of the testator such a limitation upon the bequest to Sarah in favor of Peter would have been of no actual benefit to Peter, because Sarah had then a number of children and there would be no probability of her dying without leaving children. In that case Peter could not have disposed of the farm devised to him, but could only have had the use of it as he now has. Peter would then have had to pay the legacy of $4,000 at the death of the testator in order to make the estate of Sarah equal to his. For, the estate given to him is worth at least $8,000 more than that given to his sister. So it is now, if Peter is permitted to retain the $4,000 until he dies he will have in his possession $4,000 of the portion of his sister and an estate worth $4,000 more than she has received beside. This would clearly not be an equal division, for Peter would during his life have the use of a property worth $18,000 while his sister would have but $9,000 or one half as much.

But it was known to the testator, that Peter had no children and would probably have none; and therefore while he was willing to provide for Peter and any children he might leave and make them equal to Sarah and her children, he was unwilling to provide for strangers such as Peter might make his devisees. He wanted to keep his property in his own blood, hence after providing for Peter and any possible children he might have just as he had done for Sarah and her children, he declared that after Peter had enjoyed his bounty as long as he lived then in the event he left no children the farm should pass to Sarah or her children subject to a charge of $2,000 in favor of Mary C. Couch, the wife of Peter, should she survive him. This is the whole scheme of the will as is apparent upon its face, and in no contingency was it intended to postpone the payment of the legacy to Sarah until the death of Peter; because to do so would not only be to disregard the plain mandate of the will, but make the division of the estate grossly unequal. It does not seem to me, therefore, that the will is either unnatural or unjust to Peter even in view of all the facts in these causes.

It is very common in wills for testators to provide limitations and cross remainders in the event, that any of the devisees should die without children, and it has never been supposed, that the fact, that some of the devisees had children while others had not at the time the will was made, would make the portions of the devisees unequal, The following are such cases: *Norris* v. *Johnson*, 17 Gratt. 8; *Tebbs* v. *Duval*, Id. 349; see 3 Jarm. on Wills 347; *Abbott* v. *Essex*, 18 How. 202.

We are referred by counsel for appellee to 3 Jarm. on Wills, 22, where the anthor says, "It has long been settled that when a devisee, *whose estate is undefined*, is directed to pay the testator's debts or legacies, or a specific sum in gross, he takes an estate in fee, on the ground that if he took an estate for life only he mght be damnified by the determination of his interest before reimbursement of his expenditure."

This rule has no application to the devise in this instance. Here, as we have seen, the devise to Peter S. Couch is defined and fixed by the will. It is only in cases where the estate of the devisee is doubtful or undefined by the terms of the will that this rule can be invoked. (*Abbott* v. *Essex*, 18 How. 202; *Mooberry* v. *Marye*, 2 Munf. 453.)

At the time the testator died the farm devised to Peter was held by him under a lease from his father which did not expire until January 1st, 1886, and it is therefore claimed that the legacy of $4,000.00 charged upon the farm and which Peter is directed to pay to his sister, should not be made to bear interest until the time at which the lcase terminates. This claim can not be sustained. The devise of the farm to Peter merged and extinquished the lease and from the time the devise took effect he held the farm in all respects as if it had not been leased to him. (2 Pom. Eq. Jur. 244, § 787; *Little* v. *Bowen*, 76 Va. 724.)

There is also a question as to the time at which this legacy of $4,000.00 shall commence to bear interest. A legacy, for the payment of which no other period is assigned by the will, is not due till the end of the year after the testator's death; and as interest, in the absence of an express contract, can only be claimed for non-payment of a demand actually

due, it is an undisputed general rule, that although a legacy vests, where no special intention to the contrary appears, at the death of the testator, it does not begin to carry interest until a year afterwards, unless it be charged solely on lands. (2 Chitty's Bla. Com. 514, note; *Bradford* v. *McConihay*, 15 W. Va. 732.)

This legacy is made a charge upon land, but not solely so charged. It is also made a personal demand against the devisee. (3 Pom. Eq. Jur., 224, § 1,246; *Brown* v. *Knapp*, 79 N. Y. 136.) The legacy here, under the special facts and circumstances, I think should bear interest from the death of the testator notwithstanding the fact, that it is not charged solely on land. It is a bequest to a child of the testator and is in effect a gift to her out of land. The devisee of the land is required to pay this sum to his sister in order, that her portion of the estate may be equal to his; and inasmuch as the son took the land at the death of the testator it seems to be right and reasonable, that he should be required to account to his sister for this legacy as of the time he commenced to enjoy the land.

For the forgoing reasons, I am of opinion, that the decree of the Circuit Court should be reversed, the bill in the first of these causes dismissed and the second cause remanded to said court for further proceedings there to be had in accordance with the principles announced in this opinion.

REVERSED. REMANDED.