# CHARLESTON.

## NEAL v. HAMILTON COMPANY.

Submitted March 8, 1911.    Decided January 30, 1912.

1. WILLS—*Construction—General Rules—Intention of Testator.*

   In construing wills, words will not be interpolated, except when necessary to effectuate the manifest intention of the testator. Inference or conjecture is no justification; nor is the probability that if testator's attention had been called to a particular event he would have provided against it, justification for interpreting words to give the will that effect. The intent must be gathered from the will taken in all its parts, giving every word and expression its due weight and effect, if not inconsistent with the whole will when taken together.    (p. 255).

2. SAME—*Construction—Supplying Technical Words.*

   Supplying technical words is only permissible when the intention to be aided thereby is apparent beyond reasonable doubt,

the purpose being to develop a defectively expressed intent. If from the words employed the testator's intent can not be gathered, words can not be supplied to disclose that intent, for it may not have been his intent. (p. 255).

3.  SAME—*Construction—General Rules—Intention of Testator.*

It is only where the will affords no satisfactory clue to the real intention of the testator, that resort may be had to legal presumptions and rules of construction, and then such rules must yield to the apparent intention of the testator, expressed in his will, for the true inquiry is not what the testator meant to express, but what the words he used to express. (p. 256).

4.  SAME—*Construction—Estate Conveyed—"In Case of."*

After the death of his wife, the life tenant, testator devised to his two sons, James and John, his farm to be equally divided between them; but in a subsequent paragraph provided that, "In case of the death of either of my sons above named I will and bequeath that the remaining son living shall have and hold in his own right the whole of the above named bounded two tracts of land."

According to the plain intent, the words "In case of" should be construed to mean "at" or "upon"; and the whole phrase "In case of the death of" as referring to an event to occur subsequently to the death of the testator. (p. 258).

5.  SAME—*Construction—Estate Conveyed—Fee Simple—Joint Tenancy.*

The will expressly limiting the estate devised to James and John, to the survivor, they did not, on the death of the testator, by virtue of section 8, chapter 71, Code 1906, severally take fee simple estates in the land devised; nor by virtue of section 18 of said chapter, as tenants in common; but a joint remainder in fee simple, subject to the right of survivorship, with only the rights and subject to all the limitations attaching to estates in joint tenancy, as at common law. (p. 260).

Appeal from Circuit Court, Roane County.

Bill in equity by Oscar L. Neal against the Hamilton Company and others. From the decree the Hamilton Company and another appeal.

*Reversed, and Bill and Cross Bill Dismissed.*

*Van Winkle* and *Ambler, Payne* and *Payne, Berkeley Minor, Jr.,* and *Benjamin Trapnell,* for appellant Hamilton Company.

*Pendlelon* and *Pendleton,* for appellant John Z. Neal.

*Linn & Byrne,* for appellees; *S. P. Bell, Geo. F. Cunningham,* and *Linn & Byrne,* for appellee Oscar L. Neal; *Harper* and *Baker,* for appellees Goff and Heck.

MILLER, JUDGE:

Oscar L. Neal, infant son of James L. Neal, and grandson of E. N. Neal, both deceased, plaintiff, and Lee Goff and A. S. Heck, defendants, and cross bill plaintiffs, and alleged purchasers of a part of the alleged one half interest of said infant in all the oil, and all the interest of said infant in all the gas in and under a tract of one hundred and thirty acres of land, in Roane county, have sued the Hamilton Company, the owners of a lease of said land for oil and gas, and the lessors Adaline Neal, widow, and John Z. Neal, son, and devisees under the will of said E. N. Neal, deceased, seeking to set aside and cancel said lease, and to remove the same as a cloud upon their titles; and an accounting of the oil and gas produced; and praying also for a receiver pending the suit, and for general relief.

The rights of the parties, it is conceded, depend wholly upon the proper construction to be given the will of said E. N. Neal, deceased.

The will, every part of which is important in arriving at the real intent of the testator, is as follows:

"In the name of God Amen. I, E. N. Neal, of the County of Roane and State of West Virginia and District of Walton being of sound and disposing mind but weak in bodily strength and knowing the uncertainty of life do make and establish this my last will and testament revoking all other wills heretofore made by me and want my property after my decease to be distributed as follows to-wit:

"First. I will and bequeath to my beloved wife Adaline the sole use and occupation of my farm on which I now live together with all the horses, cattle, sheep, farming utensils, household and kitchen furniture and all other personal estate not herein enumerated during her natural life time after the payment of all my just debts.

"Second. Except the bay filly which I bought of J. T. Ward I will to my oldest son James Neal.

"Third. I will unto my daughter Sarah A. C. Daugherty

the black colt bought of James Harper by her paying her mother, Adaline Neal the sum of three dollars.

"Fourth. After the death of my wife Adaline I will and bequeath unto my two sons James L. Neal and John Neal the Farm I now live on to be equally divided between the two above named sons. The above request includes both tracts of land I now own adjoining the lands of William Harmon, J. H. Daugherty, Mathew Hively, D. T. Fleshman, Zaddock Canterberry, H. F. Gibson, heirs of J. R. Ryan and Henry Summers.

"Fifth. I will and bequeath that my wife Adaline, or in case of her death, my two sons, James L. Neal and John Z. Neal shall pay unto the following named children of Adaline and E. N. Neal, to-wit: M. J. Neal, M. E. Neal, Martha Ellen Neal, Emma J. Neal, Rebecca A. Neal, the sum of twenty five dollars or the value of twenty five dollars at marriage and in case they remain single they shall have a home on my farm during their natural life.

"Sixth. In case of the death of either of my sons above named I will and bequeath that the remaining son living shall have and hold in his own right the whole of the above named bounded two tracts of land."

The facts and circumstances surrounding a testator when making his will are often important in interpreting the language employed, perhaps never more than in this case. Counsel, therefore, have stipulated, substantially, as follows:

First, that Neal, the testator, was a farmer, and died, testate, November 18, 1881, leaving surviving him, Adaline Neal, his widow, a married daughter, Sarah A. C. Daugherty, five unmarried daughters, and two unmarried sons, James L. and John Z. Neal. Second, that the testator, his wife, his unmarried daughters and his two sons, were at the time of the execution of the will, at the time of the testator's death, and for a long time prior thereto, had been living together on the farm. Third, that James L. Neal was born August 20, 1866, and John Z. Neal, August 19, 1880; that at the time of the execution of the will, and the date of the death of the testator, he owned no other lands, and that there had been no prospecting or drilling for oil or gas, and none had been discovered on or near his farm, and none known to exist within at least twenty five miles there-

of. Fourth, that the testator had been sick for some time prior to the execution of his will, and was then dangerously ill, and fully informed by attending physicians that he could not get well; that his death was only a question of a few days at best, and that he then fully understood and realized that fact. Fifth, that after the death of the testator his son James L. married Chloe F. Daugherty, by whom he had one child, the plaintiff Oscar L. Neal, born October ——, 1894, and that he died intestate, in 1899, leaving his widow and his said son, his only heir, surviving him; and that he had in no way attempted to dispose of any supposed interest in the land involved in this suit. Sixth, that the widow, Adaline Neal, and the said John Z. Neal, both of whom survived said James L. Neal, are still living.

On the pleadings and these facts, the court below in the decree appealed from, was of opinion and so decreed, that upon the death of the testator his sons James L. and John Z. Neal took by the will a defeasible estate in fee simple in said farm, subject to the life estate of the widow; and that the defendant John Z. Neal could have become the owner of the whole farm described, "only upon the contingency of the said James L. Neal dying before him *without issue.*" And that the plaintiff Oscar L. Neal, as the heir of his father, James L. Neal, is entitled to the undivided one half interest and estate in said land, and to a like undivided interest in and to all the oil, gas and other minerals thereunder, subject to the life estate of his grandmother, Adaline Neal.

It is conceded, that to give the will this construction, it is necessary, as the court did, to interpolate in the sixth paragraph, after the words, "in case of the death of either of my sons above named," the words "without issue." In the light of the language of the testator in the several paragraphs of his will, and of the stipulated facts, was the court justified in so interpolating these words? Both sides agree that if these words were necessary to effectuate the manifest purpose and intent of the testator, the court was justified in reading them into the will. We emphasize the words "manifest purpose and intent of the testator."

Able and elaborate briefs have been submitted by the numer-

ous counsel engaged on both sides of this controversy. If the old farmer, who made and executed this will could have survived the present controversy, he would certainly have been greatly surprised that so much could be said and written concerning his testamentary instrument.

We cannot within the limits of this opinion undertake to review, criticise or differentiate all the many decisions cited by counsel in support of the many propositions advanced. As many times said by courts and text writers precedents are of little value in interpreting wills; each case must necessarily depend on its own facts and circumstances, and the particular language employed by the testator to manifest his intention.

A comprehensive statement of a few general rules will be sufficient for our present purposes: First, that in construing and interpreting wills, courts are justified in interpolating words not used by the testator, only when it is necessary to do so in order to effectuate the manifest intention of the testator. Bare inference or conjecture will not do; nor will the fact that it is probable if the testator's attention had been called to a particular event he would have provided against it, warrant the interpolation of words to give the will such effect; intent must be gathered from the will itself taken in all its parts, giving to every word or expression its due weight and effect, if not inconsistent with the general intent of the whole will when taken together. *Liston* v. *Jenkins,* 2 W. Va. 62; *Graham* v. *Graham,* 23 W. Va. 36; *Augustus* v. *Seabolt,* 3 Metc. 156, 159; *Butterfield* v. *Hamant,* 105 Mass. 338; *Hamilton* v. *Boyles,* 1 Brevard 414; *Selden* v. *King,* 2 Call 72. A second or co-ordinate proposition, supported by the authorities cited, and by many others, applicable here, is, that supplying technical words is only permissible when the intention to be aided is apparent beyond a reasonable doubt, the purpose being to develop a defectively expressed intent; for if from the words employed by the testator his intent cannot be gathered, words cannot be supplied to disclose his intent, for it may not have been the intent of the testator. Courts are not at liberty to guess or conjecture. Besides the authorities cited, see *McKeehan* v. *Wilson,* 53 Pa. St. 74; *Lynch* v. *Hill,* 6 Munf. 114; *Abbott* v. *Middleton,* 21 Beav. 143.

A proposition laid down by this Court in *Graham* v. *Graham,* *supra,* and re-enforcing the above rules, and pertinent here, is: "When a testator in the disposal of his property overlooks a particular event or matter, which, had it occurred to him, he would probably have guarded against, the court will not employ or insert the necessary clause for the purpose of supplying the omission." And "though the inference of intention be more or less strong, yet if not necessary or indubitable, the court will not aid the supposed intention by adding or supplying words. All the parts of a will are to be construed in relation to each other so as, if possible, to form a consistent whole."

It is only where the will affords no satisfactory clue to the real intention of the testator, say the decisions, that courts may from necessity, resort to legal presumptions and rules of construction, and then such rules must yield to the apparent intention of the testator, expressed in his will, for the true enquiry is not what the testator meant to express, but what the words he used do express. *Couch* v. *Eastham,* 29 W. Va. 793; *Cresap* v. *Cresap,* 34 W. Va. 315; *Tebbs* v. *Duval,* 17 Grat. 349; *Moon* v. *Stone,* 19 Grat. 130; *Pack* v. *Shanklin,* 43 W. Va. 304.

Limited by these rules, let us endeavor to place ourselves in the situation of the testator, and with due regard to the simple language of his will, try to interpret his meaning.

We observe that he was fully advised and understood that death was imminent, and that he had but a few days left of his earthly existence.    Besides his widow, whose welfare was naturally uppermost in his mind, and for whom he would naturally make ample provision, he had five dependent, unmarried daughters, and two infant sons, the eldest, James, being then but fifteen years of age, the youngest, an infant of only fifteen months.    The family was large and the farm on which he lived quite small, in comparison, on which to charge, as the testator did, the burden of family support.    It was manifestly in his thought that his widow would live to enjoy her life estate for many years, and with their help to bring up, maintain and educate her children.    His unmarried daughters, of whom he had five, and for whom he could and did make but small pecuniary provision, were also manifestly the special subjects of his concern.    The pecuniary provision made for them was, that

as they should marry, his widow during her life should pay them the sums stipulated in his will; after her death that burden was to be borne by his sons. But this was not all, these daughters were to have a home upon the farm so long as they should remain single. It could not have been in the mind of the testator, however, that his infant sons would soon come into possession of the estate devised to them, nor that when they did do so, they should take and hold the land devised, or divide the same between them in any way inconsistent with the expressed intention of the testator that the daughters should be paid by them or the survivor of them, the stipulated sums on their marriage, and that they should have a home there, so long as they remained single. True we must say the testator contemplated a division of the land, between the sons, for the language of the fourth paragraph is, "to be equally divided between the two above named sons." But the plain, manifest intent of the testator was that that division should be consistent with his expressed intention that his daughters should enjoy the home provided for them during their maidenhood, and subject also to the rights of the survivor.

Such having been the manifest plan, scope and purpose of his will, it seems to us, the testator could not better have expressed his intent than by the plain language employed by him, and that it is wholly unnecessary to interpolate words to effectuate that intent. Evidently grandchildren were not in his thought. The words "heir" or "heirs" are words of very common use, and their meaning well understood by people in the country; yet the testator nowhere makes use of these words. The testator thought first of his widow, then of his dependent unmarried daughters, and of his two infant sons. In disposing of his farm, he also contemplated the burden, first cast upon the widow, then upon the sons, or the survivor of them, to pay the daughters as they should marry the sums he provided, and the maintenance of a home for them during maidenhood, however long continued. Our knowledge of human nature satisfies us that the purposes of the testator, after the death of his widow, and one of the sons, would be best accomplished through the agency of the surviving son, than through grandchildren. The probable inharmony that would follow a division of his land

and of its use and occupation, between a surviving son and immediate or remote issue of the one dying, if he thought of the subject, would naturally occur to him and justify him in disposing of his farm according to the plain language of the will. If by giving effect to the plain words employed by the testator we can best effectuate his manifest intention, we are not permitted by rules of construction to interpolate words and thereby defeat his purpose, though we might think it right, or equitable, in order to provide against a contingency which the testator might have provided against if it had occurred to him, for this the authorities say would be to make a new will for the testator.

How can we say then that the testator by the sixth paragraph of his will, intended that the surviving son "should have and hold in his own right the whole" on the death of the other, only on condition that the one dying should leave no issue? We can guess, and imagine and speculate and theorize on the subject, but we are not justified we think in saying that such an intent manifestly appears, or that it is necessary to interpolate any words of a technical character to effectuate a plain intent.

On what principle or theory then can the decree below be sustained? for it must not be forgotten that we must interpolate the words "without issue," or the decree is manifestly wrong. It is sought to support the decree by reference to decided and analogous cases; by referring the words of the sixth paragraph, "in case of the death of", to the death of the devisee occurring in the life time of the testator; and lastly, appellees rely on the provisions of sections 8, 18 and 19 of chapter 71 of the Code, as converting a joint estate into a tenancy in common, and devolving the estate of the son first dying on his surviving issue.

The case of *Liston* v. *Jenkins, supra,* is regarded by counsel for appellees decisive of their contention. This case not only recognizes, but affirms the general rule, that words will only be supplied in order to effectuate the manifest intention of the testator, "and for this purpose only." While in that case a divided court thought, the words "without issue" were necessary to express the true intent of the testator, it was because the grandson affected, then in being, a namesake of the testator, had been

first preferred, and a special object of the testator's bounty, and that the testator manifestly had not intended, by omitting the technical words, to cut him off with a bare life estate; for in that event the estate given him would have gone to his brothers and sisters, less preferred, contrary to the manifest intention of the testators. No such considerations are presented here.

In *Abbott* v. *Middleton, supra,* another case relied on, the bequest was to the widow for life, at her death to testator's son for life, and on his demise to any children he might have. Then there was a gift over in case the son died before his mother. The master of the rolls in that case, justifying the interpolation of the words "without leaving any child," said, that the testator manifested a great and solicitous anxiety to provide for his grandchildren. The father and mother both survived the son. Without interpolation of the words "without leaving any child" the gift over would have wholly cut out the grandchildren, manifestly in the mind of the testator, for whom it was evident he entertained anxious solicitude.

The case of *Selden* v. *King, supra,* cited in *Liston* v. *Jenkins,* is also relied on. The court in that case having held, that as an estate tail had been devised to the daughter, a gift over upon her death, simply, was repugnant, and that the testator evidently meant to add the words "without heirs of her body."

*Dulaney* v. *Dulaney,* (Ky.) 79 S. W. 195, is another case cited. There was a devise in trust for W. to receive the income until he was twenty five years old; then to him absolutely if he was capable of managing the estate; otherwise to trustees for his sole benefit. Should he die before he reached the age stated, there was a devise over to other persons. The court thought the words "without issue" should be interpolated, as there was no reason for supposing that the testatrix ever had the absurd purpose of disinheriting W's. children if he should die before he was twenty-five years old, but if he managed to live until he was twenty-five, they were to have his property upon his dying intestate.

In the cases of *Spalding* v. *Spalding,* Cro. Car. 185, and *Strong* v. *Cummins,* 2 Burr. 767, relied on, the devise was to the testator's son and his heirs, with devise over in case of the son's death. In each of these cases the intention of the testator, with

respect to. the heirs, was manifest, and he clearly meant a devise over in default of issue.'

Among other cases relied on are *Nelson* v. *Combs,* 18 N. J. Law 27, and *Baker* v. *McLeod,* 79 Wis. 534. It will be found that these and other cases, as those we have just been considering, are clearly distinguishable from the case we have here. It should also be noted in this connection that not all the cases in which a remainder is limited upon the death of a devisee, after the devise of land to him, and to his issue or heirs, justify the interpolation of the phrase "without issue," as a qualification, making the remainder contingent instead of certain to vest. See *Butterfield* v. *Hamant, Augustus* v. *Seaboll,* and *Hamilton* v *Boyles, supra.* It is wholly unnecessary to further continue this review of the decisions.

But appellees seek to support the decree below by referring the words "in case of death" in the sixth paragraph, to the death of the testator. Thus construed the effect would be to make the paragraph read, "In case of the death of either of my sons (before my death and without issue) the surviving son shall have the whole of above land." We cannot accept this interpretation. The testator upon his death bed was not contemplating the death of his infant sons, or either of them, as an event to happen before his death. Much time and space are devoted to this proposition in the briefs of counsel; but it is wholly unnecessary to elaborate the subject here. By the use of the words "in case of" the testator evidently meant at or upon "the death of either of my sons," and as an event to occur subsequently to his death. *Ewing* v. *Winters,* 34 W. Va. 24. The old rule of referring survivorship to the death of the testator, though another period be intended, is not the rule in this state. The more modern rule obtains here, that survivorship will be referred to the event plainly intended by the testator, whether that event be before, at the time of, or after the death of the testator. *Schaeffer* v. *Schaeffer,* 54 W. Va. 681; *Dent* v. *Pickens,* 61 W: Va. 488.

Lastly, are the plain provisions of the will, and the estate or estates created thereby, materially controlled or affected, or prejudiced, by the provisions of sections 8, 18 and 19 of chapter 71, Code 1906? The pertinent provisions of these sections are:

"8. Where any real estate is  *   *   *   devised   *   *   *
to any person without any words of limitation, such devise
    *   *   *   shall be construed to pass the fee simple   *   *
*   *   unless a contrary intention shall appear by the will."
"18. When any joint tenant shall die  *   *   *   his part
(of real estate) shall descend to his heirs or pass by devise,
    *   *   *   subject to debts, curtesy, dower,   *   *   *
as if he had been a tenant in common." "19. The preceding
section shall not apply ' *   *   *   to an estate conveyed or
devised to persons in their own right, when it manifestly ap-
pears from the tenor of the instrument that it was intended
that the part of the one dying should then belong to the others."

Though the devise of the fourth paragraph of the will is to the .
two sons without words of limitation, it is insisted, that the
provisions of said section 8 carried the fee simple to the sons,
subject to the life estate, and though a joint tenancy at com-
mon law was thereby created, the estate of the deceased son,
upon his death, by virtue of said section 18, passed to the plain-
tiff, his heir, "as if he had been a tenant in common." But sec-
tion 8 says, unless a contrary intention shall appear by the
will; and section 19 says, "the preceding section shall not apply
    *   *   *   to an estate conveyed or devised to persons in
their own right, when it manifestly appears from the tenor of
the instrument that it was intended that the part of the one
dying should then belong to the others." Does not a contrary
intention appear in the sixth paragraph of the will?   And
though survivorship at common law be abolished by said section
18, converting a joint tenancy into a tenancy in common, it is
only by virtue of that section; and section 19 dissolves that ef-
fect, "when it manifestly appears from the tenor of the instru-
ment that it was intended that the part of the one dying should
then belong to the others." How could a testator have more
clearly manifested his intention that the "part of the one dying
should then belong to the others," than by saying as he did in
the sixth paragraph of his will, that "the remaining son living
shall have and hold in his own right the whole of the above
named bounded two tracts of land?" The words of the devise
in the fourth paragraph must be placed in juxtaposition to
these plain and positive words of the sixth paragraph. The pro-

visions of the statute cannot be applied or otherwise enforced, except by due regard to both provisions of the will.

Is there anything then in the nature, character or quality of the estate which the two sons took on the death of the testator, to let in the plaintiff by inheritance, to succeed to the share which his father might have taken, and intercepting the operation of the sixth paragraph, in favor of the surviving son? We think not. True in this State as in Virginia the right of survivorship, at common law, is abolished by statute, but this is not so, if the deed, or as here, the will, expressly limits the estate granted or devised to the survivor. When so limited the grantees or devisees take joint estates only, subject to all the limitations attaching to such estates as at common law. 2 Minor's Inst. 410. Thus dower would not attach in favor of the widow of the one dying, for at common law to give dower the husband must not be seized as a joint tenant, in consequence of survivorship. 2 Minor Inst. 121. And of course nothing would at his death go by inheritance to his heirs.

These conclusions call for reversal of the decree below, and a decree here that the bills and cross bill be dismissed.

*Reversed and Bills and Cross Bill Dismissed.*