NEW MARTINSVILLE BANK *v.* C. E. BURLINGAME *et al.*

(No. 8023)

Submitted February 5, 1935. Decided February 26, 1935.

*E. H. Yost,* for appellant.
*A. E. Larrick,* for appellees.

LITZ, PRESIDENT:

This is a suit by an alleged creditor of a testamentary trust · to sell the lands belonging to the estate for payment of debts.

Thomas M. Burlingame, a citizen of Wetzel County, West Virginia, died testate in 1925, bequeathing and devising all of his property (of the appraised value of $11,592.58, consisting largely of realty), to his son, Thomas W., and daughter, Virgie Marie, as executor and executrix, respectively, of his estate, with directions to apply the income therefrom to the maintenance of his widow, Amanda, and, if necessary, to sell the lands to provide her a comfortable support. The will further directed the executor and executrix, after the death of the widow, to sell the remaining property and distribute the proceeds among his nine living children and the son of a deceased daughter. In 1927, Virgie Marie resigned the trust. The following year, Thomas W. died and W. E. Culp was appointed administrator with the will annexed. Thomas W., as executor, borrowed from New Martinsville Bank of New Martinsville, West Virginia: February 18, 1927, $600.00; March 17, 1927,

$700.00; and April 26, 1927, $500.00, for which he executed his notes as executor, indorsed by the widow. He used the money to repair buildings belonging to the estate and to convert one of them, formerly used as a hotel, into apartments. The notes were renewed by him from time to time and, after his death, by Culp as administrator under a power of attorney executed by the adult remaindermen.

This suit was brought by the bank in 1932, after the death of the widow, against the beneficiaries under the will and others to sell the lands belonging to the trust to satisfy its claim. The commissioner, to whom the cause was referred for the purpose of ascertaining the assets and liabilities of the estate, reported the obligations in the amounts and order of priority as follows: 1, Costs of suit.; 2, fee in favor of F. V. Iams as attorney for the administrator, $100; 3, taxes for 1933; 4, (a) balance due W. E. Horton for funeral expenses of Amanda Burlingame, $323.00; (b) medical services rendered by Dr. John O. Theiss to Amanda Burlingame during her last illness, $100.00; (c) medical services rendered by Dr. E. Vest to Amanda Burlingame, $86.25; (d) for amounts expended by C. E. Burlingame "for the use, support and benefit of" Amanda Burlingame, $2,935.54, which includes $300.00 paid by him on the funeral expenses of his mother, Amanda Burlingame; 5, (a) amount due New Martinsville Bank on the three notes, including interest, $2,003.67; (b) balance due Wetzel Supply Company "on account of supplies for the use of T. M. Burlingame estate," including interest, $177.55; (c) balance due Van Camp and Renner "on account drilling water well on T. M. Burlingame estate," $40.00. The trial court sustained exceptions to the finding in favor of the bank, but confirmed the report in all other respects. The bank, appealing, assigns error to the rulings (1) rejecting its claim, and (2) approving the other specified liabilities reported by the commissioner.

The basis of the ruling by the trial chancellor upon the first point is that the executor was not authorized, under the will, to borrow money for the purpose of converting the hotel into apartments. There is no direct testimony as to whether the properties were enhanced in value by the improvements, but

there was material increase in rents thereafter. The power of attorney executed by the adult remaindermen, August 12, 1928, authorizing the administrator to renew the notes to the bank, recites that the proceeds thereof ''were used for the benefit of the estate.'' The will of the testator, which names his wife as the chief object of his bounty, fairly vests in the executor and executrix the management of the estate in such manner as to yield the best return. Even with the increased rents due to the expenditure of the loans from the bank and the sale of some of the real estate for the support of the widow, it became necessary for her son, C. E. Burlingame, to advance, at the instance of the administrator, a large sum of money for that purpose.

In view of the provisions of the will vesting the executor and executrix with the title and management of the property and the authority to sell the real estate for the support of the widow, the material increase in the rents, apparently due to the loans from the bank, which were approved by the remaindermen, we are of opinion that its claim is an obligation of the estate. ''Recent American decisions show an inclination on the part of the courts to hold that the right of managing the trust real estate includes, by implication, authority to make such improvements and alterations, to be paid for out of the principal, as are wise and reasonable for conservative investors in real estate.'' II Perry on Trusts and Trustees, 2nd Ed., page 817. ''The trustee, however, has the power as well as the duty, to make expenditures or incur indebtedness for whatever repairs and changes are reasonably necessary to the preservation of the property for the purposes for which it was placed in trust, unless the instrument creating the trust contemplates that repairs shall be made by another, such as the life tenant, subject to the approval of the trustee.'' 65 C. J., page 712.

There is no question of the right of C. E. Burlingame to recover the money advanced by him to the estate for the benefit of the widow. The rule relied on by appellant, that services rendered or money expended for a near relative is presumed to be a gift, has no application. The evidence shows that the expenditures were made by C. E. Burlingame at the instance

of the administrator, who was authorized and directed under the will to provide for the widow.

The serious question is whether funeral expenses of the widow is a debt against the trust estate. In view of the fact, already noted, that the will of testator names the widow, who left no property, as the chief object of his bounty, we think the trust estate should be charged with a reasonable amount for her funeral expenses. (The reasonableness of the amount allowed has not been questioned.) In *In re Van De Walker's Estate*, 141 N. Y. Supp. 325, where a husband died leaving an indigent widow, and by his will gave her the life use of all of his property with the right to use as much of the principal as should be necessary for her maintenance, it was held that her funeral expenses should be paid out of his estate. In the opinion of the court, written by SEXTON, S., it is said: "I find no law that covers the question here involved, and think that some ought to be made. I therefore hold and decide that where a husband dies, knowingly leaving an indigent widow, and a will by the provisions of which he gives the life use of all his property to the widow, and provides: 'If at any time the income of the same, is insufficient for her support, then she is to have as much of the principal, each year, as is necessary for her maintenance, including the income, as aforesaid'—it was his intention that her reasonable funeral expenses should be paid by his representative out of his estate, and the administrator herein is credited with the amount of the same." The rule is followed in *In re Montgomery's Estate*, 221 N. Y. Supp. 319, and approved in *In re Turner's Estate*, 266 N. Y. 435.

The commissioner and the court have ignored the provisions of the statute (Code 1931, 44-2-21), which gives preference to (1) funeral expenses to the extent of three hundred dollars, and (2) to the claims of physicians, not exceeding fifty dollars, for services rendered during the last illness of decedent. Preferences in favor of claims for medical services and funeral expenses are thus limited where decedent leaves an estate. They cannot be enlarged in a case like this where decedent leaves no property.

The decree, complained of, is reversed and the cause remanded with instructions to the circuit court to enter a decree

allowing all the claims reported by the commissioner in the order following: 1, Costs of suit; 2, fee in favor of F. V. Iams as attorney for the administrator, $100.00; 3, taxes for 1933; 4, (a) on funeral expenses of Amanda Burlingame, $300.00; (b) for services rendered by Dr. Theiss to Amanda Burlingame during her last illness, $50.00; 5, remaining indebtedness.

*Reversed and remanded.*