JOHN WILCOX, *Admr., etc. v.* CORMA MOWREY *et al.*

(CC 665)

Submitted January 13, 1943.   Decided February 9, 1943.

*Maxwell & Young,* for plaintiff.

*Stathers, Stathers & Cantrall, Mary Frances Brown, Charles W. Louchery* and *Kendall H. Keeney,* for defendants.

Fox, Judge:

William I. Mowrey, whose domicile was Harrison County, died in June, 1939, leaving a will, dated August 13, 1931, written in his own hand, in which he expresses his desire that all debts be paid, and the second clause of which reads as follows:

> "I give devise and bequeath to my wife Agnes Mowrey, all of my entire estate, of every kind both real & personal, during her lifetime, at her death I desire that all property remaining be sold and that Corma Mowrey daughter of Loyd Mowrey & Mowrey Frame daughter of Harry Frame, of Weston, West Va. share equal in the remaining estate."

The will provided that his wife should qualify as "administratrix" without bond, and in a codicil thereto, dated January 27, 1936, and in consideration of what the testator terms "his kindness to each of us", he provided that Roy Lorentz should, subject to certain exceptions, have all the real estate in Jarvisville lying on the east side of the county road.

Agnes Mowrey declined to qualify as executrix of her husband's will, and John Wilcox was, by the County Court of Harrison County, named as his administrator with the will annexed, and duly qualified as such. The estate was appraised at the sum of $6,730.54, of which $1,680.88 was personalty, and $5,049.88 real estate. The administrator paid the funeral expenses and debts of the testator, and in doing so, and in providing for the support of Agnes Mowrey, widow and legatee and devisee under the will, converted into cash and disbursed the personal estate and the income from the real estate, except a balance of $1.98, as shown by a statement of receipts and disbursements filed with his bill.

Agnes Mowrey died in January, 1942, leaving no real estate and little, if any, personal property, although her estate was committed to the sheriff of Harrison County, and he is made a party to the suit. She left debts in the aggregate of $1,063.60, of which $855.00 was for medical services rendered her subsequent to the death of her husband, and the residue for services rendered and supplies furnished by different persons. The expense of her funeral amounted to $564.08, so that the total of the claims against her estate, which are sought to be charged against the estate of William I. Mowrey in this suit, is the sum of $1,627.68.

The purposes of this suit, as appear from plaintiff's bill, may be classified under two heads: (1) To secure a construction of item two of the will, and thereby determine the respective rights of the creditors of Agnes Mowrey and the defendants, Corma Mowrey and Mowrey Frame Burton, devisees and legatees thereunder, to the end that the plaintiff may be advised of his duties and responsibilities under said will, and how any fund which may be derived from the sale of the property of the testator remaining at the death of Agnes Mowrey shall be distributed; and (2) to subject to sale such part of the real estate of William I. Mowrey as may be necessary to pay the debts contracted by Agnes Mowrey, in and about her care and support, and for the cost of her funeral.

The bill has many, if not all, of the elements of a general creditors' suit for the settlement of the estate of a decedent, and for the subjection of his real estate to the payment of his debts, but no indebtedness of William I. Mowrey existing at his death is alleged, and it is assumed that all such indebtedness has been paid. The provisions of the will in question are relied upon as the basis for the contention that the estate of William I. Mowrey is liable for the debts of his widow, contracted by her after his death, in and about her maintenance and medical care, and for her funeral. This contention is urged because of the provisions in the will concerning "all property remaining" and "the remaining estate" of the testator.

The defendants, Corma Mowrey, and Mowrey Frame Burton, named in the will as devisees and legatees, after the termination of the Agnes Mowrey life estate, demurred to the bill, and assigned the following grounds:

"FIRST: It appears from the bill of complaint that the indebtedness and burial expenses of W. I. Mowrey have been fully paid out of the personal estate coming into the hands of the administrator.

SECOND: It appears from the face of the bill of complaint that the alleged indebtedness for which the plaintiff seeks to sell the estate of William I. Mowrey is not indebtedness of the decedent William I. Mowery.

THIRD: It does not appear from the bill of complaint that the estate of William I. Mowrey is charged with payment of indebtedness of Agnes Mowrey, the life tenant under his will.

FOURTH: It appears from the bill of complaint that plaintiff has no duties respecting final settlement of the estate of William I. Mowrey except a statement of his accounts before the commissioner of accounts, and that he has already proceeded to lay his accounts before said commissioner.

FIFTH: The administrator, with the will annexed, of William I. Mowrey, deceased, is without power or authority under said will, or otherwise, to sell the real and personal estate of said decedent for payment of alleged indebtedness of Agnes Mowrey, deceased."

The demurrer was overruled in general terms, and the court certified its ruling to this Court. The questions of law arising on the demurrer are not in anywise simplified, the certificate merely setting out the demurrer as quoted above. In this situation, we must consider the demurrer as a whole. If the suit can be maintained for any purpose, the action of the trial court in overruling the demurrer will have to be sustained; but inasmuch as there may be a question as to whether all of the relief prayed for can be granted is one fairly arising upon the record, and one

which, in the interest of an expeditious settlement of the William I. Mowrey estate, we think should be passed upon at this time, for the further reason that it is material and necessary to such settlement, we proceed to pass upon the two questions outlined above.

The first question is that of the right of the plaintiff to maintain this suit for any of the purposes stated in the bill. Aside from the provisions of Code, 41-3-7, we think the suit is maintainable for the reason that a personal representative is, upon a proper showing, entitled to the aid of a court of equity, where he operates under a will, deed, contract or other instrument, the meaning of which is not clear, and where there is a substantial risk to him in making distribution of an estate or trust in his hands. Before the enactment of the statute cited, the jurisdiction of a court of equity for such purposes was limited, and could only be invoked as an incident to general equity jurisdiction. *Martin* v. *Martin,* 52 W. Va. 381, 44 S. E. 198; *Buskirk* v. *Ragland,* 65 W. Va. 749, 65 S. E. 101; *Messer* v. *Reitz,* 81 W. Va. 483, 94 S. E. 952; *Prichard* v. *Prichard,* 83 W. Va. 652, 98 S. E. 877. In *McDonald, Committee,* v. *Jarvis,* 64 W. Va. 62, 60 S. E. 990, 131 Am. St. Rep. 889, we held:

"When the meaning of a will, deed, contract or other instrument, relating to the subject matter of a trust, is doubtful, and, by reason of such doubt, the trustee is embarrassed or exposed to danger in the execution of his trust, and the law affords him no remedy by which his rights, powers and liabilities may be defined, and his duty indicated, a court of equity will construe the instrument and declare its legal force and effect by way of advice and instruction."

But we think Code, 41-3-7, applies to this case. This section reads:

"Notwithstanding any other provision of law, and notwithstanding there is no other ground of equity jurisdiction, courts possessing general equity powers shall have and take jurisdiction of a suit to construe an ambiguous will at the suit

of the executor, or administrator with the will annexed, or of any beneficiary thereunder whose interests are affected by a construction of the ambiguous provision."

We hold, therefore, that the demurrer was properly overruled as to the part thereof which raises the question of the plaintiff's right to maintain his suit.

As stated above, the only indebtedness set up in the bill is that contracted by the life tenant, Agnes Mowrey, subsequent to her husband's death. We assume that no other indebtedness exists which may, in any event, be asserted against the William I. Mowrey estate. We are, therefore, confronted with the question whether the indebtedness sought to be imposed on such estate may, under any provision of the will in question, or of the will as a whole, be so imposed. If it can be, then the duty of the plaintiff is to sell the real estate, and first pay the costs of this suit and expense of sale, next the asserted indebtedness, if properly proven, and then distribute any balance between the two defendants who, under the will, are entitled to the remainder of said estate. If not, the plaintiff is only entitled to the costs and expense of this suit, and the estate as a whole passes to said two defendants, free from the debts contracted by Agnes Mowrey, and from the expenses of her funeral.

We apprehend that no one will dispute the rule that, in the construction of wills, the intention of the testator, if not in conflict with some rule of law, must control; nor that, where the meaning of the words employed is not clear, evidence of surrounding circumstances may be considered in reaching the true intent of the testator. But these rules are somewhat limited by another rule, equally well established, and which is stated in 9 Digest of Virginia and West Virginia Reports, page 1104, as follows:

"While the intention of the testator is the 'polar star' of construction, it must be found in his expressed words; the meaning of the words as used by the testator being the equivalent of the legal intention, i.e., the intention which the law recog-

> nizes as operative and dispositive.. And it is not proper for the court to speculate upon what the testator may be supposed to have intended to do, instead of giving strict effect to his words. The true inquiry is not what the testator meant to express, but what the words he has used do express."

Where the language of a will is clear, the courts can do nothing but carry it into effect. *Couch v. Eastham,* 29 W. Va. 784, 3 S. E. 23; *Cowherd v. Fleming,* 84 W. Va. 227, 100 S. E. 84. "Where the language of a will is plain, courts are not at liberty to speculate on the intention of the testator." *Harris v. Neal,* 61 W. Va. 1, 55 S. E. 740; *Neal v. Hamilton Co.,* 70 W. Va. 250, 73 S. E. 971; *First Huntington National Bank v. College,* 115 W. Va. 113, 175 S. E. 338.

But it may be said that, admitting the correctness of the rule, as announced above,- it does not apply' to the case at bar, for the reason that the meaning of the will under consideration cannot be ascertained from the language employed by the testator therein; and that, therefore, we must consider surrounding circumstances and other elements which might enter into any ascertainment of the real intention of the testator.

On the controlling question, we think that the language of the will plainly states the purposes to be accomplished, namely, that the wife of the testator should have a life estate in his property, and that upon her death, it should pass to the two persons named as being entitled to share equally therein; and that upon the death of the life tenant, the property in the hands of the administrator with the will annexed, should automatically pass to the two persons mentioned above, and to Roy Lorentz to whom a portion thereof is specifically devised.

In our opinion, this provision of the will took effect immediately upon the death of the life tenant, and covered all of the estate of William I. Mowrey, then in the hands of his administrator, and free and clear of any indebtedness whatever except that which may, contrary to our assumption, have been contracted by the testator in his lifetime.

But it is argued that under the provisions of the will, property which should pass to Corma Mowrey and Mowrey Frame (now Burton) was the "property remaining" or the "remaining estate", and that this language, by implication, created in Agnes Mowrey the right to use the corpus of the estate for her maintenance and support, and that her funeral bill should be paid therefrom. If we were here concerned with the right of Agnes Mowrey to use a portion of the estate which she held as life tenant, for her maintenance and support, the words quoted above would require careful consideration. But that question is not here raised. Agnes Mowrey did receive the benefit of the personal estate and the income from the real estate during her lifetime, and the use of said property and income by her has not, so far, been questioned. If the contention was that she had no right to use any part of the estate other than the incomes, or such type of property as a life tenant would ordinarily have the right to use and consume, it might be plausibly contended that the testator, by the use of the quoted language, contemplated that the estate which would pass to those taking in remainder would be something less than the entire estate. The question of the extent to which a life tenant may use the corpus of the estate for her maintenance and support, in circumstances like those here presented, has not, to our knowledge, been specifically decided in this State or elsewhere. Nor can any definite rule be laid down. The circumstances surrounding each case usually determine the rights of the life tenant. Provisions like those contained in the Mowrey will are usually passed upon in connection with the claim that they create a fee simple estate, rather than a life estate, and the general rule seems to be that where property is bequeathed or devised to a tenant for her life, and there is language in the will vesting in the life tenant the power to use the estate for maintenance and support, that provision does not raise the estate to a fee, but only creates a life estate. This is the holding of our own cases. *Behrens* v. *Baumann,* 66 W. Va. 56, 66 S. E. 5, 27 L. R. A. (N. S.) 1092; *Stout* v. *Clifford,* 70 W. Va. 178, 73 S. E. 316; *Wiant,*

*Admr.* v. *Lynch,* 104 W. Va. 507, 140 S. E. 487. It is, in our opinion, the full extent of the holdings in *Sumerset* v. *Mize,* 181 Ky. 567, 205 S. W. 674, 2 A. L. R. 1237; *In re Doerfler's Will,* 225 Wis. 418, 273 N. W. 460; *Schowalter* v. *Schowalter,* 221 Ala. 364, 128 So. 458; *Baumgras* v. *Baumgras,* 5 Misc. 8, 24 N. Y. S. 767; *Hege* v. *Ickes,* 267 Pa. 57, 110 A. 238. Many of these cases recognize the right of a life tenant to use such of the corpus of the estate, and in some instances, where the language justifies, to use the whole of it; but we do not think any of them go to the extent of holding the life tenant may contract debts, for any purpose, and charge the corpus of the testator's estate therewith. The nearest approach to any such holding is *Bank* v. *Burlingame,* 116 W. Va. 122, 178 S. E. 690. There the will vested title to the property of the testator in the executors with direction to apply the income therefrom, and, if necessary, sell lands, to provide for the support of his widow during her life. Under these circumstances, this Court properly held that the estate was chargeable with the reasonable funeral expenses of the widow.

In the case before us, there is no direct authority granted to the life tenant to consume the corpus of the estate. Giving the language employed by the testator a most liberal interpretation in favor of his widow, there may be justification for the action of the administrator in using a portion of the estate for her care and support. Further, we cannot go. In extending the implication of words used in a will or other instrument beyond their technical meaning, we must draw the line somewhere; and we think it should be drawn at the point where the title of the property has passed to those ultimately entitled thereto.

The life tenant did not, during her lifetime, dispose of any of the property now in controversy. That property was in existence and in the hands of the administrator at the death of the life tenant. The plain language of the will is that upon the death of the life tenant, any property remaining should go to the two persons named, and who are the defendants and demurrants herein. We cannot read into the will a meaning which would create a charge

against the property remaining. Appeals which have been made, that we construe the provisions of the testator's will, as to the course his estate should take upon the death of his widow, so as to charge the same with her debts and funeral expenses, call for speculation on our part as to what the testator may have intended to do or what he should have done, and in such speculation, we are not permitted to indulge. It is argued that the testator never intended that his estate should pass to anyone at the expense of his wife being deprived of her reasonable support during life, and a decent funeral at death. And all this may be true, but, although he could have done so, he made no provision against such contingency, and we do not feel that we would be justified in a ruling which would, in our opinion, change the plain import and meaning of words actually employed by him in disposing of his estate.

We, therefore, sustain the action of the court in overruling the demurrer in so far as that demurrer bears upon the right of the plaintiff to maintain his suit. We reverse the court to the extent that his action may be construed to permit the sale of the William I. Mowrey estate to cover debts contracted by Agnes Mowrey during her lifetime, and her funeral bill. Inasmuch as the William I. Mowrey estate should bear the expenses of its administration, the costs in this Court will follow the cause and be paid out of said estate.

*Affirmed in part; reversed in part.*