WILL OF GREENE: FIRST NATIONAL BANK & TRUST COM-
PANY OF RACINE and another, Appellants, vs. GREENE
and others, Respondents.

*April 8—May 5, 1942.*

454

For the appellant First National Bank & Trust Company there was a brief by *Albert & Kilmurry* of Racine, and oral argument by *Robert C. Albert.*

For the appellant Elizabeth Greene there was a brief by *Benson, Butchart & Benson* of Racine, and oral argument by *Donald A. Butchart.*

*Harold A. Konnak* of Racine, guardian *ad litem,* for the respondent Grace Jeanette Greene.

*Henry S. Smieding* of Racine, guardian *ad litem,* for the respondent Marilyn Elizabeth Greene.

For the respondent executors there was a brief by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *Charles F. Wratten.*

FOWLER, J.    From the foregoing statement it appears that the controversy is over the construction of the will of F. J. Greene, and that the widow of Carlyle S. Greene, a deceased son of the testator, claims that the one-fourth share of the residue of the estate of the testator passed to Carlyle, and to

her under Carlyle's will. Two daughters of Carlyle claim that the share of Carlyle that would have passed to him had he survived to the time of actual distribution passed to his issue. The daughter Grace claims that she, although an adopted daughter, qualifies to take as Carlyle's issue while Marilyn claims that Grace is not Carlyle's issue but she is his only issue and that she takes the whole of his share.

The legal title to the trust property passed by the will to the three persons named as executors and trustees without any order of court assigning the property to them as trustees, notwithstanding that the appointment as trustees is ordinarily deferred until the executors have settled their final account. *McWilliams v. Gough*, 116 Wis. 576, 93 N. W. 550. The equitable title however passed to the four children of the testator.

We are of opinion that the rights of the children of the testator vested at the death of the testator, subject to be divested upon the contingency of death of a child prior to receipt of his or her share, passing for the moment the meaning of the phrase "shall be paid" in the last sentence of the third paragraph of the will. This seems to follow from *Will of Roth*, 191 Wis. 366, 210 N. W. 826. It is there stated, page 371 :

"The fundamental rule seems to be that where a legacy is postponed the time of vesting depends upon whether the postponement relates merely to the enjoyment of the legacy or whether it is attached to the substance of the gift. Where it is attached to the substance of the gift the vesting is postponed, but where the postponement relates merely to the enjoyment of the gift, vesting takes place as of the date of the death of the testator. Whether it is for one purpose or the other is sometimes a difficult question, but it is well settled that where a future gift is postponed in order to let in some other interest or, as it is sometimes expressed, for the benefit of the estate, the gift is vested although the enjoyment is postponed. Note, L. R. A. 1915 C, 1049."

The opinion cites *Williams v. Williams,* 135 Wis. 60, 115 N. W. 342; *Scott v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18; and *Baker v. Estate of McLeod,* 79 Wis. 534, 48 N. W. 657, and expressly overrules, page 370, *Cashman v. Ross,* 155 Wis. 558, 145 N. W. 199, which is to the contrary, and *Will of Moran,* 118 Wis. 177, 96 N. W. 367, so far as if at all it indicates the contrary. There is here no doubt that postponement of the gift was entirely for the benefit of the estate.

This leaves for construction what time the phrase "shall be paid" in the third paragraph refers to, as to trust property especially, and no doubt the testator contemplated that nontrust property should be distributed at the same time as the trust property, or before that time, as estates are usually closed within five years.

By the second paragraph it is plain that as to the trust estate the testator provided it should be distributed to his children : (1) Upon termination of the trust; and (2) that the trust should terminate not later than five years after his death. That being the testator's declaration, situations that subsequently arose could not operate to postpone the distribution. *Will of Stack,* 217 Wis. 94, 98, 99, 258 N. W. 324. This would be the plain construction but for the last sentence of the third paragraph, quoted in the statement preceding the opinion, which provided that if a child should die before payment of his share his share should go to his or her issue. But this clause did not change the time of payment as contemplated by, and thus fixed by, the second paragraph. Payment, as to trust property, in the third paragraph, refers to the time fixed by the second paragraph for payment. Thus if the son died before the time for payment thus fixed his share went to his issue. But if the son survived that time the share went to him,—vested in him absolutely.

The construction above indicated follows whether we consider the will as vesting the residue in the children at the

death of the testator, subject to becoming divested in case a child should die before receiving payment, or whether we consider it as vesting the right to take at the time of payment under the *Will of Dalrymple,* 173 Wis. 464, 180 N. W. 829, 181 N. W. 821. For in either case the phrase "shall be paid" as used in the will refers to a time prior to the death of Carlyle. In the *Dalrymple Case, supra,* a trust was created to continue ten to twenty years with power to the trustees to distribute the trust property at such times as they might determine. The trustees before expiration of the twenty years filed an account stating that $80,000 of the trust property was ready for distribution. Construction of the will was asked. One question was: Could partial distribution be made? The court held that it could. Another was: Did the legatees become entitled to take before actual payment was made? The language of the trust was similar to that of the instant trust—the property was to be paid over, delivered, and distributed to the *then living children* of brothers of the testator by right of representation. One of the living children of a brother died before being paid, but after the filing of the account. The court held that the right to payment accrued at the time of the filing of the account. The legatee who died left no children but left a wife and died intestate. The right of the legatee to his share of the fund was held to vest on the filing of the account and not to go to "then living children" of the testator's brother at the time of actual distribution but to the deceased legatee at the time of the filing of the account and thence to his wife as sole distributee under the statutes of descent.

There are numerous cases holding that under provisions like the closing sentence of the third paragraph of the instant will the time at which testator intended payment should be made, rather than the time that it actually is made, determines the time of the vesting of the right to payment. It is stated in 2 Jarman, Wills (6th Amer. ed. by Bigelow), *746, citing cases which support the text:

*"Death before 'receiving' a legacy.* Executory gifts over in the event of legatees dying before 'receiving' their legacies have given rise to much litigation. Actual receipt may be delayed by so many different causes that the court is unwilling to impute to the testator an intention to make that a condition of the legacy, and thus indefinitely postpone the absolute vesting of it. If, therefore, the will points out a definite time when the right to receive the legacy accrues, either expressly, as by directing payment at a particular age or time, or by implication from the dispositions of the will, as upon the determination of a prior life estate, the gift over will be referred to that time."

In *Sampson v. Sampson* (1896), 1 Ch. Div. 630, 635, it appears that an issue was whether a son ought to be treated as having acquired any title to any portion of income until it actually reached his hands or whether a right to the income vested in him at an earlier date. It is said as bearing upon that question:

"There is a class of cases which have not unfrequently been considered by the courts, and appear to me to have some bearing on this point: I mean those in which there has occurred a gift over on the death of a legatee before actually receiving his legacy. . . . [Citing cases.] . . . These cases are not entirely consistent among themselves; but this at least they establish —that whether or not a testator can effectually cause a vested gift to be divested before it has actually come to the hands of the legatee, such an intention ought not to be attributed where the words are not clear; and in cases where the words are susceptible of such an interpretation, the court has held that the period over which the operation of a divesting clause of this kind is to extend ought not to be held to continue beyond that at which the legacy is *de jure* receivable."

In *Johnes v. Beers,* 57 Conn. 295, 300, 18 Atl. 100, the testator left the residue of his estate in trust to convert, upon his decease, to money and divide among his four children to have absolutely, with provision that if any child should die "before he or she shall have received his or her share" such

share should be paid to his issue. A son died three years after the death of his father, without having received all of his share of the residue, leaving a will by which he left all his estate to his widow and a son. The court held that the son took the residue at the testator's death and the property involved passed by his will.

In *Finley v. Bent,* 95 N. Y. 364, 368, a will gave the residue to his executors in trust with direction to sell and divide without delay after his decease a designated portion among his three children equally in instalments, the last to be paid within five years after the testator's death, with provision that if a child should die before full payment of the whole of his or her share, so much as remained unpaid should be paid to his or her lawful issue. One of the children died more than five years after the testator without receiving his full share. It was held that the shares vested in the children at the testator's death, subject to divesting by death of a portion unpaid, but that the words "die before full payment" meant not before actual payment, but before becoming payable, and that the unpaid portion of the deceased child passed to her personal representatives.

In *Manice v. Manice,* 43 N. Y. 303, a will created a trust to sell the trust property at the death of the widow of the testator and divide into parts and transfer three of the parts to a son if then living and if not to his then living issue. There were similar provisions as to other children with like provision in case of a child not living. Held, that the parts devised vested at the death of testator in the children living at the death of the widow and a child then living came into possession and enjoyment of his share though sale and division were not then perfected by the trustees. The case holds that limitations over to take effect in case of death prior to division refer to the time appointed for division, unless the intention clearly and unequivocally appears that the vesting should not occur until completion of the sale and division. This case is cited with

approval as to the titles taken by the trustees and the beneficiaries in *Scott v. West, supra.*

In *In re Spencer,* 16 R. I. 25, 32, 12 Atl. 124, where a will gave a legacy and gave the executors five years to make the payment, but provided that if the legatee died before payment, then the legacy should fall into the residuary estate, it was held that the will made the legatee's "right to the legacy contingent upon his surviving until payment, if the legacies are paid within five years; though after the five years his right" would "become absolute, since any delay of payment after that time" would "be the fault of the executors" and they "could not take advantage of it."

Under the cases above cited we are of opinion as first above stated that as to the trust property the right of Carlyle to receive his share became absolute at the time fixed by the will for termination of the trust. And as to the nontrust property, if it is not to be presumed that the testator intended that the right to it should become absolute at the same time as the right to receive the trust property, under the rule of the *Dalrymple Case, supra,* it became absolute upon the filing of the executors' final account. The right of Carlyle could not be divested by delay in bringing to a hearing the matters undisposed of at the time of filing the final account. While delay of the hearing was prolonged by circumstances and with acquiescence of the court, these matters should not be permitted to postpone indefinitely the vesting of the right of Carlyle to receive the benefit of his legacy. The right to realize on his legacy by borrowing on the security of it or selling his interest under the will or the right to dispose of those interests by will ought not to be and therefore was not destroyed by delay caused by circumstances beyond his control. The right to dispose of by will was a valuable and a precious right of which he might not be deprived after the time fixed for the closing of the estate had arrived. By reason of the setting up a trust independent of the will to secure the monthly pay-

ments to the widow, the final distribution of the estate cannot occur until the death or marriage of the widow. Surely the testator did not intend or contemplate that the right of a child to receive his or her legacy should be held in abeyance for such period. To rule that the right to receive should be so held in abeyance would defeat, rather than effectuate, the intent and purpose of the testator. Under such ruling the right of the daughters to receive the remainder of the residue that is included in the trust created to secure the widow would still be in abeyance, and who will receive it and when the right to receive it will accrue are still undetermined and uncertain. The administration of trusts created by will and the determination of rights created by will are branches of equitable jurisprudence. Here if ever the maxim of equity should be applied that "equity looks upon that as done which ought to be done." 2 Bouv. Law. Dict., Rawle's Third Revision, p. 2132. Some cases above stated applied that maxim in ruling that the right to receive a legacy vested at the time fixed by the will for the payment of it.

Other questions are raised in the briefs but under the ruling above indicated there is no need to discuss them. Under that ruling the share of Carlyle S. Greene vested in him absolutely, and his widow Elizabeth Greene is entitled to receive it, except such part of it, if any, as is required to pay the two $1,000 legacies to his daughters.

*By the Court.*—The judgment of the county court is reversed, and the record is remanded with directions to vacate the judgment appealed from and enter judgment in accordance with the opinion.