THE KANAWHA VALLEY BANK, *a corporation,* AS SOLE SURVIVING TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF ADDISON M. SCOTT

*v.*

CHAUNCEY L. HORNBECK, *et al., etc.*

(No. 12544)

Submitted October 4, 1966. Decided December 13, 1966.

*Grant P. Hall, Jr., Harry B. Lambert,* for appellants.

*Spilman, Thomas, Battle & Klostermeyer, Hawthorne D. Battle,* for appellee.

BERRY, JUDGE:

This is an appeal from a final order of May 3, 1965, in the Circuit Court of Kanawha County, West Virginia, in a declaratory judgment proceeding involving the construction of a complicated will disposing of a large estate left by Addison M. Scott in Charleston, West Virginia. The exact question concerns the disposition of a fractional interest of a testamentary trust, and of about 22 original defendants, seven appeal, the others having settled their differences among themselves, or being formal parties, or being satisfied with the disposition made of the question presented in the instant case.

An appeal and supersedeas were granted by this Court December 13, 1965, the matter was placed on the docket in the September Regular Term, 1966, at which time it was argued and submitted to the Court. The declaratory judgment proceeding was instituted by the Kanawha Valley Bank, a corporation, as sole surviving trustee under the last will and testament of Addison M. Scott, deceased, to interpret certain provisions of that will relating to the testamentary trust. All persons who could have an interest under any interpretation were made parties. A stipulation by the parties settles the factual issues.

Addison M. Scott came to the State of West Virginia from the State of New York and engaged in business

in which he was successful, accumulating thereby considerable real estate holdings in the City of Charleston, particularly along Capitol Street in what is now the main business section. These properties have continued to increase in value. In addition, he made investments which became part of his estate. On April 27, 1927, he died and left a fourteen page will which went into great detail as to the disposition of his property. The will consists of sixteen paragraphs. Several of them deal with legacies of relatively small amounts to specified persons living, one set up a small trust for charity beds in hospitals, and one disposed of his home and related real estate directly to his wife, Florence J. Scott, who was much younger than he, as he had married her late in life. He also gave her fifty thousand dollars outright, and provided for the establishment of corporations to handle benevolent matters, for the appointment of executors and trustees, and for the types of powers to be vested in them.

The portion of the will with which we are particularly concerned is found in Paragraph VI which will be later set forth verbatim. In substance, it gave residue of his property to trustees to be held and managed by them, with the income therefrom to be paid his widow on either a monthly or quarterly basis, and upon her death the estate was to be divided into two equal parts, one of which was to be used for charitable purposes, with which we are not concerned, although it apparently has been the subject of other litigation, and the other part of which he further divided into fifths which he gave to nieces and nephews. It should further be emphasized that the devise and bequest to trustees by which he set this trust up was to them ''in fee simple'' to be held in trust, and when the bequest to the nieces and nephews was made, it likewise was in fee simple.

The exact words of Paragraph VI are as follows:

''All the rest and residue of my estate, real, personal and mixed, wheresoever situate, I

give, bequeath and devise in fee simple to Edward W. Knight, Russel G. Quarrier, and my wife, Florence J. Scott, as trustees, and to their successors, to be held in trust by them.

(In Margin: /s/ Addison M. Scott)

''Said trustees shall, out of the net income of said trust estate, pay over the same in convenient installments not less frequently than quarterly or more frequently than monthly, to my said wife, Florence J. Scott, so long as she continues in life. *Upon her death said trust estate shall, subject to any then existing leases or contracts made by said Trustees, be divided by the surviving trustees into two (2) equal parts of which one (1) equal part I devise and bequeath in fee simple to the following nieces and nephews, viz:*

''*One-fifth (1/5) to each, to-wit: to Mrs. Margaret Hornbeck, Mrs. Virginia L. Foster, Mrs. Maria L. Parke, William A. Scott, and Harold C. Scott, the interest of any one or more of them dying before the termination of the trust to go to his or her heirs at law according to the statute of descent and distribution of the laws of the State of New York then in force, per stirpes, as if the one so dying had died intestate, seized and possessed in fee simple of said part at the time appointed aforesaid for the said division of said trust estate in the two (2) equal parts;* and the other equal part of said trust estate shall be conveyed and transferred in fee simple by said trustees or the survivors to the Central Trust Company, of Charleston, West Virginia, a corporation, as Trustee, and to its successors, to be held in trust by it, and it shall have the same power in and over the property belonging to the trust estate as are conferred by Paragraph X of this my will upon the trustees therein named, but without any restrictions upon the sale of any part of my property on

Capitol Street, in the City of Charleston, West Virginia, if the same or any part thereof shall be conveyed as part of said trust estate.

"I direct that out of the net income of said one-half (1/2) of said trust estate to be conveyed and transferred as aforesaid to the said Central Trust Company, as trustee, the said trustee shall pay in convenient installments for the relief of the poor, or to such organized charities, whether incorporated or otherwise, of the said City of Charleston, for the relief of the poor, as the said trustee may, in its absolute discretion, deem best, but no trust shall attach to any of the income so paid out by said trustee for charities, and if my said wishes shall be disregarded and the same be used for other purposes, it may be so used without liability to account to anyone whatsoever

(In Margin:                    /s/ Addison M. Scott)

for so doing; and for the purpose of enabling the said trustees, Edward W. Knight, Russell G. Quarrier, and Florence J. Scott, the survivor or survivors of them, and their successors making a division of said trust estate into two (2) equal parts as aforesaid and divide the one-half ($\frac{1}{2}$) devised to my nieces and nephews into five (5) *equal parts,* they are hereby authorized and empowered as, in their absolute discretion, they may deem best or proper for such division, to sell and convey all or any part of the property, real or personal, forming a part of said trust estate, and to collect any moneys due the trust estate and divide the moneys arising from any such sale or collections, and the purchasers of any such property shall not be bound to see to the application of the purchase money, or to inquire into the purpose or purposes for which said trustee may decide to sell said property or any part thereof." [Emphasis supplied.]

Paragraph VI, considered alone, would imply broad powers of management on the part of the trustees, but in addition thereto, several other paragraphs spell out these powers in detail and make it clear that both executors and trustees have full management powers of almost unlimited scope in the carrying out of their duties, such as selling property, exchanging property, investing proceeds, paying for upkeep, and doing almost everything else appropriate to a business man in the furtherance of his own activities.

Apparently the original plan of the testator for trustees and executors was to have certain close associates act as executors along with his widow, with the charitable trust to be administered by the Central Trust Company. Due to the refusal of one to accept, the death of another, and the appointment of the Central Trust Company as substitute and the later merger of the Central Trust Company with the Kanawha Valley Bank, the Kanawha Valley Bank finally became the sole trustee after the death of the widow.

Florence Scott lived until June 2, 1961, so the problem of division of the trust did not arise until then. She had many years before her death intermarried with William O. Abney.

At the time Florence Scott Abney died, the situation with reference to the nieces and nephews named as legatees in the will to each of whom fifths of the half of the trust, making a tenth of the entire trust, were given, was as follows: Margaret Hornbeck had died before Florence and left sons; Virginia L. Foster who is in her 80's was living when Florence died; Maria L. Parke died before Florence and left three sons and a husband who later remarried. A controversy among this group holding the Parke interest was settled amicably by agreement as to how they would divide their share of the trust.

William A. Scott was living at the time Florence J. Scott died, but died September 15, 1964, after her

death, leaving two children, William H. Scott and Genevieve Fortis. In addition, William A. Scott had in 1963 set up an inter vivos trust in the United States National Bank of Omaha, Nebraska, which became a defendant to this action as trustee along with William H. Scott, the other trustee.

Harold C. Scott, who was a brother of William A. Scott, died January 1, 1953, without issue, and willed his estate to his wife Lena Scott, and the same was appraised and settled without any knowledge of any possible money from the Addison Scott estate. Lena A. Scott died January 30, 1955, with no issue, and left a will by which she gave one-fourth of her estate to Raymond L. Armstrong, her brother, one-fourth to Edna A. King (later Scholl), her sister, one-tenth to be equally divided between William H. Scott and Genevieve Fortis, who were the children of William A. Scott, and 40 per cent to be divided equally among the children of Edna A. King, who are Donald T. King, Gordon C. King, Gloria King Wheet, and Joyce Kauwee. The appellants in this present case are the executor of Lena A. Scott and those to whom Lena A. Scott willed her estate, with the exception of William H. Scott and Genevieve Fortis who did not appeal because they are claiming under their father William A. Scott as to the Addison Scott trust rather than under Lena A. Scott.

The issue arises by the contention of those claiming under the Lena A. Scott will that Harold C. Scott had a vested interest in the Addison Scott trust at the time he died, which he disposed of by will to Lena or of which she received over half under the laws of New York where he died, regardless of any will, and which Lena then passed on to the appellants by her will. On the other hand, if Harold C. Scott had no vested interest, and the question of who his heirs were did not arise until 1961 when the time to consider the division of the Addison Scott trust arrived, then at that time, under the laws of the State of New York,

his only heir was his brother William A. Scott who would inherit Harold's interest as well as his own interest. Lena Scott was not living at that time in 1961 and could not have been his heir.

The contention of the appellants is that Harold C. Scott had a vested interest which could be divested only by his death leaving issue. He left no issue and they contend that since it was not divested, he would have been able to will it to Lena. On the other hand, as the appellees contend, if Harold had only a contingent or potential interest of some kind, then it was not vested in anybody until 1961, at which time William A. Scott received it. The circuit court, without deciding what the interest was, held that William A. Scott received it.

There are three assignments of error presented on this appeal to the effect that the Circuit Court erred in not holding: (A) That Addison M. Scott devised and bequeathed to Harold C. Scott a vested remainder in fee simple of one-fifth of one-half of his trust estate, subject only to the life estate of his widow, Florence J. Scott; (B) that if the Court was of the opinion that Harold C. Scott did not take a vested remainder in fee simple of one-fifth of one-half of the trust estate of Addison M. Scott, subject only to the life estate of Florence J. Scott, then he took such vested remainder subject to be divested in the event, and only in the event, that he died prior to the termination of the trust leaving descendants among whom his interest could be distributed per stirpes; and he, having died without issue, or descendants surviving him, his interest became indefeasibly vested and passed by virtue of his will to Lena A. Scott, his widow, and these appellants are now entitled to 90 per cent of said interest under the will of Lena A. Scott; and, (C) that in all events, the heirs at law of Harold C. Scott must be determined on the date of his death (January 1, 1953), rather than as of the date of the termination of the Addison M. Scott trust (June 2, 1961); and, under the New York

statute of descent and distribution "then in force", Lena A. Scott became vested indefeasibly with a remainder interest of $10,000 and one-half interest of the residue of the Harold C. Scott interest in the trust as his statutory heir at law, and she devised and bequeathed 90 per cent of her said vested remainder to these appellants.

All three assignments of error are based on the premise that Harold C. Scott had a vested interest in the estate of Addison M. Scott. The first two assignments are based on the premise that the will of Addison M. Scott devised and bequeathed to Harold C. Scott a vested remainder in fee simple of 1/5 of $\frac{1}{2}$ of the trust estate, subject only to the life estate of Florence J. Scott. This contention is not supported by the clear language of the will.

The first sentence of Paragraph VI in clear and unmistakable language bequeaths and devises in fee simple "all the rest and residue" of his estate, real, personal, and mixed, whersoever situated, to his trustees to be held in trust by them. This devise in fee simple is made before any other later dispositions of the residue are provided for. This placed the legal title of Addison M. Scott's estate in the trustees, and under the provisions of the will it would remain there until the further distribution of the trust and is a fee simple defeasible. Restatement of the Law of Property, § 16. (Defeasible fees have sometimes been referred to by decisions as base, qualified or determinable fees. 19 Am. Jur., Estates, § 116. See *Stephenson v. Kuntz*, 131 W. Va. 599, 49 S.E.2d 235). The legal title can be at only one place at a time. 90 C.J.S., Trusts, § 180; *Potter v. Couch*, 141 U.S. 296.

The next or second sentence in Paragraph VI provides that the trustees pay the net income of said trust estate to Florence J. Scott, testator's widow, as long as she lives. It is therefore also clear that Florence J. Scott did not have a life estate in "all the

rest and residue" of Addison M. Scott's estate. All she had was a life interest in the income from the estate. *Brookover v. Grimm,* 118 W. Va. 227, 239, 190 S.E. 797. Inasmuch as Harold C. Scott died before Florence J. Scott and before the distribution of the trust estate, he could never have been vested with the fee simple title to the trust estate as urged in the first assignment of error, because it was clearly vested in the trustees under the plain language of the will and could not be divested until after the death of Florence J. Scott which occurred in 1961.

The second assignment of error is that if Harold C. Scott did not take a vested remainder in fee simple of 1/5 of ½ of the trust estate of Addison M. Scott, subject only to the life estate of Florence J. Scott, then he took a vested remainder subject to be divested if he died prior to the termination of the trust leaving descendants to whom his interest could be distributed per stirpes, and that because of the fact he died without issue or descendants surviving him, his interest became indefeasibly vested and passed by virtue of his will to Lena A. Scott, his widow. This contention is untenable under Paragraph VI because of the clear provisions of that paragraph immediately following the provision giving the life interest to Florence J. Scott, widow of the testator. These subsequent provisions require that upon her death the trust estate shall be divided by the surviving trustees into two equal parts and one part is devised and bequeathed in fee simple to the five nieces and nephews named therein, coupled with a statement that " * * * *the interest of any one or more of them dying before the termination of the trust to go to his or her heirs at law according to the statute of descent and distribution of the laws of the State of New York then in force, per stirpes, as if the one so dying had died intestate, seized and possessed in fee simple of said part at the time appointed aforesaid for the said division of said trust estate in the two (2) equal parts; * * * "*. [Emphasis supplied.]

Harold C. Scott, one of the nephews, died before Florence J. Scott. It was thus provided by the quoted part above that if he were not living at the time for the termination of the trust and division of the estate his interest would go to his heirs, according to the laws of New York then in force, per stirpes, as if he had died intestate possessed in fee simple of 1/5 of ½ of the estate at the time for the division of the said trust estate which was in 1961 when Florence J. Scott died. The obvious meaning of this is that Harold's possibility of getting a vested interest was dependent on his living longer than Florence J. Scott, and the clear language of the will provides, in case of his death, for a substitutionary gift to his heirs per stirpes, in order to prevent a lapse of the bequest in the event of his death before the time of distribution. 96 C.J.S., Wills, § 737, *Schaeffer v. Schaeffer*, 54 W. Va. 681, 46 S.E. 150.

The interest involved in the case at bar is a future interest and is classified as an executory limitation. Harold C. Scott or his heirs received under the will of Addison M. Scott an executory devise, that is, the possibility of obtaining 1/5 of ½ of the residuary estate of Addison M. Scott in fee, but both can not have it at the same time. It is, therefore, a substitutionary gift to Harold's heirs in case of his death before the distribution of the estate. The Law of Future Interests, 2nd Ed. (1956), Simes and Smith, §§ 534, 535.

Some authorities refer to the distribution plan of the Scott trust as the "divide and pay over rule" where there is a direction in a trust for the trustees to distribute or divide and pay over at a future time, or upon the happening of a specified event, and the explanation of the meaning of the rule is that such direction refers to the future and not the present and can only be executed in the future. *In Re Bell's Will*, 147 Minn. 62, 179 N.W. 650; *First & American National Bank of Duluth v. Higgins*, 293 N.W. 585.

It is the contention of the appellants that the words "per stirpes" means lineal descendants, and that inasmuch as Harold C. Scott had no descendants, the gift over to his heirs per stirpes would fail and he therefore was vested with the 1/5 of the ½ interest of the trust estate. Although per stirpes is usually used in connection with issue or blood relatives, it is not limited thereto. It is a method of distribution by stocks or by class and not per capita or by head. It has a much broader meaning than descendants. It means any group, or class, such as nieces and nephews and even relatives by marriage. It has been held that where a will devised property to a testator's wife, and at her death one-third to the then living heirs of the wife per stirpes, the wife's second husband took an interest as an heir at her death. *Irvin v. Brown*, 160 S.C. 374, 158 S.E. 733, 734. Per stirpes relates to the method of distribution, not the relationship, and it is usually used as a method of division in a substitutional gift because the exact persons to take will not be known until a future time. *Irvin v. Brown, supra.*

The term per stirpes means the taking by representation of a deceased person and in the case at bar any heirs of the nieces and nephews would merely take the interest of the nieces and nephews, that is, any heirs of one of the nieces or nephews would only take 1/5 of the ½ and not per capita or by head of the ½ of the residue of the estate devised to the nieces and nephews and their heirs. It has been held that an adopted child comes within the meaning of the term per stirpes. *In Re Fedders' Trust,* 61 N.Y.S.2d 340, 346, 187 Misc. 207. See *Patchell v. Groom,* 185 Md. 10, 43 A.2d 32; *In Re Watson's Will,* 300 N.Y.S. 1126, 164 Misc. 940. It can readily be seen that the contention of the appellants that Harold C. Scott took a vested remainder because he did not leave descendants is not tenable under the meaning of the language contained in the provisions of Paragraph VI of Addison M. Scott's will.

The third assignment of error that in all events the heirs at law of Harold C. Scott must be determined on the date of his death rather than the date of a termination of Addison M. Scott's trust is likewise without merit, because such construction is against the clear meaning of the provisions of Addison M. Scott's will, as contained in Paragraph VI. The heirs at law of Harold C. Scott, he having died before the termination of the trust, obtained his interest under the statute of descent and distribution of the laws of New York then in force per stirpes as if Harold C. Scott had died possessed in fee simple of the 1/5 of ½ of said trust estate at the time of the division of the said trust estate, which was in 1961, the date of Florence J. Scott's death. The designation of the interest of Harold C. Scott's heirs is accomplished by "words of purchase" which denote the class of persons taking the interest in the event he did not. Black's Law Dictionary, Words of Purchase, page 1399. The clear language of the will of Addison M. Scott, as contained in Paragraph VI, provides that the heirs of any one of the nieces or nephews to whom he left 1/5 of ½ of his estate should be determined at the time of the division of the trust, and not at the date of the death of any of the nieces or nephews. Where the language used in a will is clear, there is no need for any construction of such will by the court and the testamentary intent will be carried out. *Couch v. Eastman,* 29 W. Va. 784, 3 S.E. 23; *Harris v. Neal,* 61 W. Va. 1, 55 S.E. 740; *Wilcox v. Mowrey,* 125 W. Va. 333, 24 S.E.2d 922.

Therefore, under the clear language used in Paragraph VI of the will of Addison M. Scott, the only heir of Harold C. Scott living at the time of the division of said trust was William A. Scott, the widow of Harold C. Scott having died in 1955, two years after his death and before the time provided in the will for the ascertainment of the heirs of Harold C. Scott. Consequently, William A. Scott was entitled to the interest of Harold C. Scott, as well as his own interest.

322

William A. Scott having died testate September 15, 1964, the beneficiaries under his will who appear to be The United States National Bank of Omaha and William H. Scott as trustees for the benefit of his widow, Hazel H. Scott, and his son William H. Scott, and his daughter Genevieve Fortis, who were substituted as parties in this proceeding in the place of William A. Scott on December 29, 1964, are entitled to receive his interest under the Addison M. Scott trust as their respective interests in William A. Scott's estate may appear.

For the reasons stated herein, the judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*