CAROLINE W. GUTHRIE, *et al.*

*v.*

THE FIRST HUNTINGTON NATIONAL BANK, *etc., et al.*

*and*

MARY FRANCES NISTENDIRK

*v.*

THE FIRST HUNTINGTON NATIONAL BANK, *etc., et al.*

(No. 12977)

Submitted May 11, 1971.        Decided June 29, 1971.

Dissenting Opinion July 2, 1971.

Rehearing Denied December 6, 1971.

*Carney M. Layne,* for appellant, Staker.

*Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charles F. Bagley, James R. Bailes,* for appellee, Mary Frances Nistendirk.

BERRY, JUDGE:

This is an appeal from a final judgment of the Circuit Court of Cabell County, West Virginia, involving two civil actions which were consolidated, both relating to the construction of a complicated will of Ashby J. Wilkinson of Huntington and Barboursville, West Virginia. The appeal was granted June 29, 1970, from a judgment of February 20, 1970, affirming the court's prior decision. The case was submitted for decision on arguments and briefs of the

respective parties at the 1971 April Special Docket. The specific question involved is whether the widower of a deceased daughter of the testator takes an interest in the Wilkinson estate residuary trust as a beneficiary under her will, or whether the division of the residuary trust should be in two parts to two other daughters to the exclusion of any part to the third daughter, now deceased, whose share is claimed by her husband, Lewis A. Staker. The trial court held that the residuary trust should be divided into two parts to the two living daughters instead of a three-way division which would have allowed Lewis A. Staker to take his deceased wife's share.

The amount of money involved and to be distributed under Mr. Wilkinson's will is about $180,000. His will was executed on April 5, 1951, and he died March 20, 1952. On April 4, 1951, the day before the will was executed, he and his wife, Lula Z. Wilkinson, by deed, created an inter vivos trust for the benefit of Mrs. Wilkinson consisting of real estate and securities which was anticipated to produce an annual income for her of about $5000. Upon the death of Mrs. Wilkinson the principal and corpus of the inter vivos trust estate was to "pour over" into the residuary trust contained in Mr. Wilkinson's will which was also to be terminated upon the death of Mrs. Wilkinson and to be divided under the provisions of the residuary clause in his will. The manner of the division of the property of the residuary trust of Mr. Wilkinson's will by the trustees, who are the same under both it and the inter vivos trust, is the entire question involved in these consolidated cases.

A brief outline of Mr. Wilkinson's will is appropriate at this point before discussing the specific parts thereof.

The will provides for the payment of debts, the direct disposition of certain personal property to Mrs. Wilkinson and the buying of a residence for her. It then by Article IV devised to the First Huntington National Bank and R. M. Bagby, a Huntington lawyer, in trust, certain rural land in Barboursville in Cabell County, which apparently was where the testator's home was located, as well as some

adjacent land. It provides that the trustees, after testator's death, should sell the land and pay the proceeds quarterly to Mrs. Wilkinson and his three daughters, Caroline Wilkinson Guthrie, Genevra Wilkinson Staker, Mary Frances Wilkinson Nistendirk, to his son Earl Durbin Wilkinson and to a step-son Robert Elbon Stalnaker. It also provides that the share that is to go to his son Earl Durbin Wilkinson is to be retained by the trustees in a special trust fund, with the income to be paid to his son during his life, and if his son's wife, Florence Wilkinson, survived his son such income is to be paid to her during her lifetime and at the death of the survivor the corpus of the special trust fund should revert to his trust estate.

The will mentions the inter vivos trust by way of information, and by Article VI sets up the residuary testamentary trust with the same trustees as the land trust in Article IV, and provides for all the rest of his property, wherever situated, to be contained in the main residuary trust. Broad powers are given to the trustees with directions to pay his widow sufficient money from the income to allow her an income of at least $7500 a year when added to the amount of money she probably would receive from the inter vivos trust, with authority to invade the principal if necessary.

After that, the surplus income is to be paid quarterly to his four children and step-son. It then provides that if any of these persons die prior to the "termination" of the residuary trust estate the surplus income is to be distributed in the same manner as provided for in the final distribution of the corpus of the residuary trust.

Section I of Article VI provides for the division of the main trust and is the part of the will involved in the disposition of this case. The substance of this section is to terminate the residuary trust upon the death of Mrs. Wilkinson and for the co-trustees to make a final accounting and settlement of their administration and to divide the principal or corpus of the main trust estate among the four children and step-son, but if any of them be dead prior to

the "termination and distribution" of the trust estate then the child or children of the deceased person shall take the share of the decedent, and if there be no child or children then the group narrows so that it is to be divided among the living Wilkinson children and step-son and the child or children of any decedent *per stirpes*. Then follows the declaration that it is his intention that the property shall go to his children and step-son or to the children of any deceased one and "to no other person or persons". The rest of the will deals with substitute trustees and the executor.

R. M. Bagby, one of the original co-trustees, died and was replaced as co-trustee by Lewis A. Staker who is also the husband of the deceased daughter, Genevra Wilkinson Staker. Mrs. Wilkinson died on July 18, 1967, and the corpus of the inter vivos trust went at that time into the main trust of Mr. Wilkinson's will as created by Article VI.

At the time of Mrs. Wilkinson's death only three of the Wilkinson children were living. Earl Wilkinson died in June of 1959, and left a widow, Florence Wilkinson, who lives in Grafton, West Virginia. While serving in the United States Air Force in the Far East the step-son, Captain Robert Elbon Stalnaker, was in an airplane shot down by Russian fighter planes and was reported as missing July 29, 1953, by the Air Force and was listed as presumed dead by the official records of the Air Force November 15, 1955.

Before the trustees of the residuary trust made their final accounting and settlement of their administration and distribution of the property involved under the trust, the first civil action to construe the will was instituted on December 6, 1967, in which the three living daughters, Caroline Wilkinson Guthrie, Genevra Wilkinson Staker and Mary Frances Wilkinson Nistendirk, joined as plaintiffs to have the death of Robert Elbon Stalnaker officially declared, and they alleged that the right to the residue was vested in the three of them. Before the trial court disposed of this action, Genevra Wilkinson Staker died January 28, 1968, leaving no children, and her entire estate passed by

will to her husband, Lewis A. Staker, who qualified as her executor.

After the death of Mrs. Staker, Mrs. Nistendirk took the position that the estate should be divided into two parts instead of three and withdrew from the first civil action. She obtained another attorney and instituted a second civil action in which she asked for the property in the trust estate to be divided two ways. The defendants in the second civil action were about the same as the plaintiffs with her in the first action, except that Lewis A. Staker, who had been substituted in the first action as executor of his wife after her death, was made a defendant in the second suit along with the other trustee. The two suits were consolidated by agreement of the parties and the death of Robert Elbon Stalnaker was officially declared, and it was also agreed and decided by the court that the monies involved in the real estate trust of Mr. Wilkinson's will had been disposed of and were not involved in this consolidated case. The trial court filed a written opinion, which was made a part of the record and which stated that the main question involved was the intent of the testator, Mr. Wilkinson; that under the terms of his will the date of distribution fixed the number of those to whom the trust was to be distributed rather than the date of the death of Mrs. Wilkinson; that since Mrs. Genevra Staker had not survived the distribution of the trust estate she was to take nothing, and, therefore, her husband would take nothing.

After the decision of the trial court the trustees of the residuary trust moved the court to have the property placed in the hands of a special receiver appointed by the court, because during the appeal to this Court further changes might occur and they might be accused of causing a loss to some party by unreasonable delay in the distribution of the property. The motion was granted and the property involved in the trust estate was transferred to the special receiver pending the outcome of the appeal.

It is the contention of the appellant that under the language of the will the residual trust estate terminated upon the death of Mrs. Wilkinson and the property involved in the trust then vested irrevocably in the three living daughters of the testator, Caroline Wilkinson Guthrie, Genevra Wilkinson Staker and Mary Frances Wilkinson Nistendirk, and that there was no other language contained in the will which would change this vesting of said trust property.

It is the contention of the appellees that all of the provisions and language contained therein must be considered in determining who should receive the property contained in the residuary trust. It is their contention that the testator intended that *only* those of his children and children of a deceased child who were alive at the final distribution be allowed to take, and that the share of any who died prior to the *final* distribution should go to the living beneficiaries.

It is true that the law favors vesting of estates at the earliest possible time consistent with the language of the will. However, the intention of the testator must be given effect in the construction of his will unless that intention violates some positive rule of law. These principles, which are rules of construction in connection with wills, and under which the disposition of the instant case must be made, are clearly stated in point 2 of the syllabus of the case of *Mauzy* v. *Nelson,* 147 W.Va. 764, 131 S.E.2d 389, and point 3 of the syllabus of the case of *Tharp* v. *Tharp,* 131 W.Va. 529, 48 S.E.2d 793, which are quoted in their respective order: "2. The intention of the testator must be given effect in the construction of his will, unless that intention violates some positive rule of law." "3. The rule in favor of the early vesting of estates should not be applied in the interpretation of a will so as to contravene the expressed intention of the testator." These principles were quoted as syllabus points 3 and 4 of the case of *Security National Bank & Trust Co.* v. *Willim,* 152 W.Va. 27, 158 S.E.2d 715.

Even though the death of a person might fix a group, something that happens to some member of the group might change the eventual distribution if the language of the will clearly indicates such change should be made. In such a case the change is usually designated as a "gift over" or "substitutional gift" and it may for practical purposes be considered as contingent on a condition precedent such as a contingent remainder, or if it is considered vested it may be considered later divested by what is known as a condition subsequent or such device as an executory limitation creating a base, qualified, or determinable fee; and unless rights of a third party intervene it usually makes no difference what it is called, because all these terms add up to the same thing. There is a technical distinction between remainder gifts and substitutional gifts. Remainder gifts are usually accelerated by the failure of a preceding particular estate but substitutional gifts usually take effect because of an event which happens. Most "class gifts" to take an ancestor's place are substitutional. Where there is a gift over there are usually words of postponement contained in the will or words indictating that an element of time should intervene before the actual distribution or division of the estate is made, such as a final accounting or settlement of the estate or a decree or order of distribution. See *Re Will of F. J. Greene, Deceased,* 240 Wis. 452, 3 N.W.2d 704, 142 A.L.R. 129. It was held in the *Greene* case that where a bequest to a testator's children of the residue of testator's estate at the termination of a testamentary trust created by him provided that in the event of the decease of any child before his or her share should be paid, then the issue of such child should take his or her share, the rights of the children vested at the death of the testator subject to be divested upon the contingency of death of a child prior to the receipt of his or her share. However, since the will provided the trust should continue for "no longer than five years" the fact that the trustees and executors improperly delayed the settlement beyond the five years did not cause divesting of a share of a beneficiary who died three years

after the end of the five years. The *Greene* case illustrates that a vesting can shift in such cases, but that where it is provided that the trust property shall be "paid" it means it shall be equitably considered as paid within the limits of time in which the trustees must distribute the property, and if it is not done within such time due to the fault of the trustees the vesting after the death of the testator is not necessarily divested. It depends on whether the postponement relates only to the time of the enjoyment (actual possession), in which case it irrevocably vests at the time of the death fixed for determination, or whether the postponement relates to the *substance* of the gift, in which case a vesting would not take place until actual receipt. In any event, the postponement cannot be for an indefinite time beyond what the testator wished the end to be, and executors and trustees of estates cannot be allowed to cause a divesting by unduly delaying by improper management the settlement of an estate beyond the time limits fixed by law or will. However, in this present case the trustees had a good reason to delay pending a judicial determination of Captain Stalnaker's death.

A trust does not ordinarily terminate automatically when the time for the termination arrives because the duties of the trustees do not cease upon such termination but continue until their "winding up" duties have been completed. This principle is clearly stated in IV SCOTT ON TRUSTS, 3 Ed., *Termination and Modification,* § 344, in the following language: "When the time for the termination of the trust has arrived, the duties and powers of the trustee do not immediately cease, but until the trust is actually wound up, he has such duties and powers as are appropriate for the winding up of the trust. *The trust ordinarily does not automatically terminate merely because the time for distribution has arrived; it is terminated only when the trustee has finally accounted and conveyed the trust property to the persons entitled to it on the termination of the trust."* [Emphasis supplied]

It is the contention of the appellant that the trial court used the "divide and pay over" rule in the disposition of

the case, and that this rule is not looked on with favor and has been discredited in many states. This is merely a rule of construction applied to ascertain testator's meaning in case the will provides only for a gift to be divided or paid at some future time subsequent to testator's death. It is just the opposite of the early vesting rule of construction, and by the rule the gift is construed as taking place in the future because it is to be "divided and paid over" in the future, so it is held contingent and not vested. See 144 A.L.R. 1155, Anno. and 16 A.L.R.2d Anno. 1378. The two main exceptions to the rule are that it does not apply when the delay is to let in an intermediate interest such as a true life estate or the delay is merely for the convenience or benefit of the estate in handling assets. 144 A.L.R., Anno., at page 1171. Although the rule has been criticized by various courts and the American Law Institute, 57 Am. Jur., *Wills*, § 1231, it apparently continues to be used by many courts in the construction of wills; the rule is generally useful only if the testator uses words similar to the rule without explaining them elsewhere. See 16 A.L.R.2d Anno., 1378.

The so-called "divide and pay over" rule is not material in the disposition of the case at bar because considering all of the provisions of the will it was the clear intention of the testator to limit the class, or group, to receive the property to those composing the living beneficiaries at the time of the final accounting and settlement by the trustees and of the final distribution of the property. No other person could take or receive the property contained in the trust but his children or their children who may be living when the property was distributed as clearly stated in sub-section (b) of Section I under Article VI and further buttressed by the language in sub-section (c). The language of the will created a contingent equitable interest in the named persons which became vested in the survivors at the time of distribution. See *In Re Sheffield's Will*, 97 N.Y.S.2d 248.

In the disposition of the instant case we have no rule of law which controls the decision and we are dealing only

with rules of construction in the disposition thereof. The paramount rule of construction is that the intention of the testator must be given effect in the construction of the will. This rule of construction overrides all other rules of construction such as the favored construction of early vesting. 16 A.L.R.2d Anno., 1378; *Security National Bank & Trust Co.* v. *Willim, supra; Otta* v. *Otta,* 58 Ill. App. 2d 63, 207 N.E.2d 147.

It therefore is necessary for the proper disposition of the case presented here to consider the provisions of the testator's will in order to ascertain to whom he intended the property to go.

It was stated initially that the will in question was a complicated will. It is made so because of confusion resulting from the different parts of the will. The entire will must be considered, although the property in question to be distributed relates to Article VI of the will, which is the residuary trust. It first provides that any of the surplus income be paid quarterly to his children and that if any of them die prior to the termination of the trust the said surplus should be distributed in the same manner as provided for in the final distribution of the corpus of the trust estate.

Section I of Article VI reads as follows:

> "I. Upon the death of my said beloved Wife, Lula Z. Wilkinson, then I desire and direct that said trust estate shall terminate. My said Co-Trustees shall then make *final accounting and settlement* of their administration thereof and *shall divide the then principal or corpus* of said trust estate, together with any undistributed earnings and profits thereof into five parts of equal value and *shall make final distribution of said five parts as follows:*
>
> "i. To my daughter Caroline Wilkinson Guthrie, one of said equal parts.
>
> "ii. To my said daughter Genevra Wilkinson Staker, one of said equal parts.

"iii. To my son Earl Durbin Wilkinson, one of said equal parts.

"iv. To my daughter Mary Frances Wilkinson Nistendirk, one of said equal parts.

"v. To my step-son Robert Elbon Stalnaker, one of said equal parts.

"vi. *In the event, prior to the termination and distribution of said trust estate,* said Caroline Wilkinson Guthrie, or said Genevra Wilkinson Staker, or said Earl Durbin Wilkinson, or said Mary Frances Nistendirk, or said Robert Elbon Stalnaker, *or any one or more of them shall have died, then I desire and direct my said Co-Trustees as follows.*

" (a) If any such decedent shall leave a child or children him or her surviving, then the share of said trust property which otherwise would have gone to such decedent shall be paid over to such child or children, share and share alike.

" (b) *If any such decedent leave no child nor children her or him surviving, then the share of said trust property* which otherwise would have gone to any such decedent, or to the said child or children of such decedent, if any, *shall be distributed by my Co-Trustees among and paid over to such of my said daughters, son and step-son as may be then in life or to the child or children of any of them who may have died leaving a child or children surviving, per stirpes.*

" (c) *I declare it to be my intention and purpose that said trust property, upon the termination of said trust, shall go to said Caroline Wilkinson Guthrie* and to said *Genevra Wilkinson Staker,* and to said *Earl Durbin Wilkinson,* and to said *Mary Frances Wilkinson Nistendirk* and to said *Robert Elbon Stalnaker or to the child or children of any of them who may have died and to no other person or persons."* [Emphasis supplied]

In the first place the trust estate does not terminate on the death of the testator's wife, Mrs. Lula Z. Wilkinson,

because of the provisions at the end of Article IV providing a special trust fund for his son Earl Durbin Wilkinson and his wife. He provides that: "At the death of the survivor of my said son and of his said wife, then the corpus of said special trust fund shall revert to my trust estate."

The record indicates the son, Earl Durbin Wilkinson is deceased, although his wife, Florence Wilkinson is still living. At her death the corpus of the special trust fund will go into the main trust and be distributed in the manner provided for in Article VI. However, it appears that the parties have attempted to dispose of the provisions of Article IV and that the only thing involved in this consolidated case is the property from Mrs. Wilkinson's inter vivos trust which poured over into Article VI of Mr. Wilkinson's will upon her death which occurred July 16, 1967, the legal title to which was vested in the co-trustees of both the inter vivos trust and the Wilkinson residuary trust. Mrs. Wilkinson merely had the right to the income from the inter vivos trust and before the legal title to this property could be vested into any beneficiary it would have to be turned over to them by the co-trustees. The beneficiaries, at the death of Mrs. Wilkinson, had only an equitable interest at that time.

Section I provides that upon the termination of the trust the co-trustees must then make final accounting and settlement of their administration and after that shall make final distribution of the property. The trustees under the law provided in such cases had one year and four months in which to make such accounting and settlement of the property which came into their hands under the provisions of the trust, Code, 44-4-4, which the testator clearly indicated they should do before making final distribution of the property. However, before the accounting and settling of the administration of the trust was made, at which time the proof of the death of the step-son, Robert Elbon Stalnaker, could be made before the commissioner of accounts and approved by the county court, an action in the circuit court was instituted on December 6, 1967, to have the death

officially declared and the property vested in the surviving daughters, the plaintiffs in the first civil action. Before the circuit court acted on the first civil action Genevra Wilkinson Staker, one of the surviving daughters, died in December, 1968, after which Mrs. Nistendirk, another one of the surviving daughters, brought the second civil action alleging that the two living daughters, Mrs. Guthrie and Mrs. Nistendirk, were the only beneficiaries entitled to receive the property under the provisions of their father's will.

In connection with the testator's intention the will provides in the event that prior to the termination and distribution of said trust estate any one or more of the five beneficiaries named in the will die, the co-trustees are directed by sub-section (a) of Section I to pay over such share to the child or children of such decedent or decedents. The record indicates that no child survived Mrs. Staker. Sub-section (b) of Section I provides that if Mrs. Staker left no child or children surviving her, then her share of the trust property should be distributed and paid over to such of his said daughters as may be then in life or to the child or children of any of them who may have died leaving a child or children surviving, *per stirpes*. The words *per stirpes* constitute a method of division of property to a class, and they usually create a substitutional gift or a gift over. The class provided for in sub-section (b), Section I, is the *then* living children of the testator with any of the living children of any of them who are deceased. Therefore, the corpus of the trust estate under the mandatory provisions of this sub-section was to be distributed and paid over only to any living child of the testator (omitting the deceased step-son) or to the children of a deceased child and to no other person or persons. See *In Re Dietz' Will*, 42 N.Y.S.2d 708, (Affirmed 266 App. Div. 755, 41 N.Y.S.2d 917). This principle with regard to the words *per stirpes* is stated in point 6 of the syllabus of the case of *Kanawha Valley Bank* v. *Hornbeck*, 151 W.Va. 308, 151 S.E.2d 694, in the following words: "Per stirpes is usually used as a method of division in a substitutional

gift to a class because the exact persons to take will not be known until a future time."

The words contained in sub-section (b) are not precatory words. They direct in mandatory language that such share of the deceased daughter shall be distributed and paid over to the living daughters. Sub-section (c) of Section I further declares it to be the testator's intention and purpose that the said trust property upon the termination of said trust shall go to his said four children and step-son or to the child or children of any of them who may have died and the trust property cannot be paid to any other person or persons by virtue of the clear language in sub-section (c).

It is clear from the language of the will that even though the testator provided that the trust estate terminate on the death of Mrs. Wilkinson he did not intend to have the trust estate vest irrevocably in his children who were living at that time, because he provided that after the termination the co-trustees should then make a *final accounting and settlement* after which they should make *final distribution* of the property to his children and distribute said property among and pay over to the daughters who may be then in life. It is clear from all of the provisions of this will that the testator intended only to have the property go to the beneficiaries or their children who were living when the property was distributed and paid over by the trustees and to no other person or persons. In the case of *Otta* v. *Otta, supra,* the executors were given one year in which to settle the estate by making sales of property and during that year one of the children died and it was held that the deceased child was not entitled to the property but his children got the property under a gift over. Somewhat similar language was used in the *Otta* case with regard to the gift over as is used in the case at bar wherein the will providing about the division of the money said if the beneficiary was not then living the gift would be to the children of the beneficiaries and if no such children

(grandchildren) then survived it would go to the rest of the group. The court held in that case that the word "then" referred to the time of distribution, not to the event of the death of the living tenant, because the word "then" followed the word "distribution". In the case at bar the co-trustees were given under the law at least one year in which to make the accounting and settlement during which time one of the beneficiaries died, and in sub-section (b) of Section I of Article VI the word "then" says the share shall be distributed to the others then living. See the use of the word "then" with regard to the matter of distribution of property in a trust estate in the case of *Security National Bank & Trust Co.* v. *Willim, supra.*

It is also the contention of the appellant that Mary Frances Wilkinson Nistendirk, the plaintiff in the second civil action, assumed an inconsistent position to that assumed by her as one of the plaintiffs in the first civil action, in that she asked the court to declare the trust vested in the three living beneficiaries at that time. The trial court held that there was a change of circumstances between the time of the first civil action and the second civil action by virtue of the death of Mrs. Staker, one of the plaintiffs in the first civil action.

It is true that a party cannot take successive inconsistent positions concerning the same fact or state of facts, and this inhibition applies to admissions of facts in the pleadings or where a pleading in effect changes a fundamental fact in the case. *MacDonald* v. *Long,* 100 W.Va. 551, 131 S.E. 252; *Watkins* v. *N. & W. Railway Co.,* 125 W.Va. 159, 23 S.E.2d 621; *Hartman* v. *Hartman,* 132 W.Va. 728, 53 S.E.2d 407. The only thing that was done in the instant case was the assertion of a different conclusion of law when the circumstances in the case changed warranting such action. Unless some principle of estoppel is involved, which is not present here, a party is not bound by any admission or averments of legal conclusions in the pleadings. 71 C.J.S., *Pleadings,* § 59(d).

The trial court having heard this case and applied rules of construction applicable to wills in determining the disposition of the trust property under the will in question, this Court, after reviewing the record and considering all of the provisions of the will in question cannot say that the trial court was clearly wrong. See *Lieberman* v. *Lieberman*, 142 W.Va. 716, 98 S.E.2d 275.

For these reasons the Circuit Court of Cabell County is affirmed.

Judge Chauncey Browning participated in the decision of this case and concurred in the decision made, but his death occurred before this opinion was prepared, approved and announced.

*Affirmed.*

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent.

The Court has taken the position that the "language of the will created a contingent equitable interest in the named persons which became vested in the survivors at the time of distribution." Whether an interest of a beneficiary in an estate is vested or contingent depends upon the intention of the testator as determined by the language of the will when read in its entirety and in the light of surrounding circumstances. 5 PAGE, WILLS, Section 43.3, pages 336-37.

The pertinent language of the Wilkinson will provides:

"I. *Upon the death of my said beloved Wife,* Lula Z. Wilkinson, *then I desire and direct that said trust estate shall terminate.* My said Co-Trustees *shall then make final accounting and settlement of their administration thereof and shall divide the then principal* or corpus of said trust estate, together with any undistributed earnings and profits thereof into five parts of equal value and *shall make final distribution* of said five parts as follows:

"i. To my daughter Caroline Wilkinson Guthrie, one of said equal parts.

"ii.   To my said daughter Genevra Wilkinson Staker, one of said equal parts.

"iii.   To my son Earl Durbin Wilkinson, one of said equal parts.

"iv.   To my daughter Mary Frances Wilkinson Nistendirk, one of said equal parts.

"v.   To my step-son Robert Elbon Stalnaker, one of said equal parts.

"vi.   *In the event, prior to the termination and distribution of said trust estate,* said Caroline Wilkinson Guthrie, or said Genevra Wilkinson Staker, or said Earl Durbin Wilkinson, or said Mary Frances Nistendirk, or said Robert Elbon Stalnaker, or any one or more of them shall have died, *then* I desire and direct my said Co-Trustees as follows.

" (a)   If any such decedent shall leave a child or children him or her surviving, then the share of said trust property which otherwise would have gone to such decedent shall be paid over to such child or children, share and share alike.

" (b)   If any such decedent leave no child nor children her or him surviving, then the share of said trust property which otherwise would have gone to any such decedent, or to the said child or children of such decedent, if any, shall be distributed by my Co-Trustees among and paid over to such of my said daughters, son and step-son as may be then in life or to the child or children of any of them who may have died leaving a child or children surviving, per stirpes.

" (c)   *I declare it to be my intention* and purpose that said trust property, *upon the termination of said trust, shall* go to said Caroline Wilkinson Guthrie and to said Genevra Wilkinson Staker, and to said Earl Durbin Wilkinson, and to said Mary Frances Wilkinson Nistendirk and to said Robert Elbon Stalnaker or to the child or children of any of them who may have died and to no other person or persons." (Italics supplied.)

An examination of the Wilkinson will in its entirety discloses an intention of the testator to provide primarily

for his wife, during her lifetime, and for his five children. The testator, Ashby J. Wilkinson, then provided for alternative methods of distribution in the event of the death of one or more of his children "prior to the termination and distribution" of his trust estate.

The precise question presented for decision is whether the designated beneficiaries must only have survived the life tenant, Lula Z. Wilkinson, or whether they must survive until an actual, physical, and final distribution of the assets of the trust estate is made, regardless of how long final distribution is delayed. The answer requires a determination of the intention of the testator as disclosed by the language of the will.

Although the testator used the language "prior to the termination and distribution of said trust estate" in making provision for alternate methods of distribution in the event of the death of one or more of his children, he also provided in Subsection I of Section VI that, upon the death of his wife, the "trust estate shall terminate" and that it was his intention that the trust propery would pass "upon the termination of said trust" to the five named beneficiaries or to the child or children of any of them who may have died.

In Subsection H of Section VI, the testator made a provision for the distribution of income of the trust estate which might exceed the amount of income reasonably necessary to supplement the income of his wife and to provide a reasonable reserve against unforseen contingencies. That provision states that any surplus income shall be paid in quarterly installments to the five named beneficiaries and that in the event of the death "of any one or more of said five persons *prior to the termination of my trust estate* said surplus income shall be distributed *in the same manner as herein provided for the final distribution of my estate.*" (Italics supplied.)

The language quoted above clearly indicates that the testator intended to make a distinction between the time

the trust was to terminate and the time the assets were to be finally distributed. That same language clearly discloses his intention to require only that the named beneficiaries survive the death of his wife. I am of the opinion that the testator, by his will, clearly indicated his intention to cause the estate to vest in the remaindermen upon the death of the testator, subject to being divested as to any one or more of the named beneficiaries who might die prior to the death of the life tenant.

If the decision of the Court in this case is correct, where has the title to the testator's real estate and the ownership of his personal estate been since the date of his death? The bare legal title to the real estate and the ownership of the personal estate may be said to have been in the trustees; but, if so, they were holding the estate merely as trustees for the benefit of the owners of the property devised by the will. Can it be said reasonably or legally that, during the long, indefinite period of time from the date of the testator's death until the date of final distribution, legal title to the real estate and the ownership of the personal estate was in a state of suspension and not in any sense in the beneficiaries of the will?

In the second point of the syllabus in *Tharp* v. *Tharp*, 131 W.Va. 529, 48 S.E.2d 793, the Court stated: "A will should be construed as vesting the estate devised or bequeathed at testator's death in the absence of language therein clearly indicating an intention on the part of testator to postpone vesting until a future event; and where the provisions of the will render doubtful whether testator intended the estate to be vested or contingent, the doubt will be resolved in favor of the vesting of the estate." See also *Young* v. *Lewis*, 138 W.Va. 425, 76 S.E.2d 276.

I am of the opinion that, upon the death of the testator, Genevra Wilkinson Staker took a vested remainder subject to being divested if her death occurred prior to the death of the life tenant. Having survived the death of the life tenant, her right to take under the provisions of

the will became absolute. Her interest was, therefore, transmissable under the provisions of Code, 1931, 36-1-9, a portion of the language of which is as follows: "Any interest in or claim to real estate or personal property may be lawfully conveyed or devised. * * *." Her interest passed, therefore, to Lewis A. Staker as the executor and sole beneficiary of her will.

For reasons stated in this dissenting opinion, I would reverse the judgment of the Circuit Court of Cabell County.